**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF LOUISIANA**

|  |  |  |
|---|---|---|
| In re | ) | Case No. 18-11268 |
|  | ) |  |
| Delta Duck Farms, L.L.C., | ) | Chapter 11 |
|  | ) |  |
| Debtor. | ) |  |
|  | ) |  |
|  | ) |  |

**FIRST AMENDED CHAPTER 11 PLAN OF REORGANIZATION**
**DATED MARCH 13, 2018**

**STEWART ROBBINS & BROWN, LLC**
One American Place
301 Main Street, Suite 1640
Baton Rouge, LA 70801
Tel.: (225) 231-9998

*Attorneys for Delta Duck Farms, LLC*

Baton Rouge, Louisiana, U.S.A.
Dated:  Wednesday, March 13, 2019

## INTRODUCTION

Debtor, as that term is defined herein, proposes this Plan to resolve the outstanding Claims against and interests in the Estate, and for making distributions to holders of Allowed Claims and Interests. Reference is made to the Disclosure Statement for a discussion of Debtor's history, properties and operations, a summary and analysis of this Plan, risk factors related to this Plan and certain other matters related to the Bankruptcy Case. Subject to certain restrictions and requirements set forth in Bankruptcy Code § 1127 and Bankruptcy Rule 3019, Proponent reserves the right to alter, amend, modify, revoke or withdraw this Plan prior to the issuance of the order confirming this Plan.

## ARTICLE I.

### DEFINITIONS AND INTERPRETATIONS

**DEFINITIONS.** Unless the context otherwise requires, the following terms shall have the following meanings when used in capitalized form herein or in the Disclosure Statement:

**Administrative Expense Claim** means (a) any Professional Compensation Claim, (b) any Claim constituting a cost or expense of administration of the Bankruptcy Case asserted or authorized to be asserted in accordance with Bankruptcy Code §§ 503(b) and 507(a)(2) during the period up to and including the Effective Date, and (c) any fees or charges assessed against the Estate pursuant to 28 U.S.C. § 1930.

**Administrative Expense Claim Bar Date** means the twenty-first (21st) day following the Effective Date.

**Affiliate** means any Person or Entity described under Bankruptcy Code § 101(2).

**Allowed** means that, with respect to a Claim, (i) such Claim has been listed by Debtor in the Schedules, as such Schedules may be amended by Debtor from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed nor contingent and no contrary proof of Claim has been filed, (ii) a proof of Claim with respect to such Claim has been timely filed and no objection thereto has been interposed within the time period set forth in this Plan or such other applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or an objection thereto has been interposed and such Claim has been Allowed in whole or in part by a Final Order, (iii) such Claim has been expressly Allowed by a Final Order or under this Plan, or (iv) such Claim has been compromised, settled, or otherwise resolved pursuant to the authority granted to Debtor or Liquidating Trust pursuant to a Final Order of the Bankruptcy Court or under this Plan; *provided*, *however*, that Claims Allowed solely for the purpose of voting to accept or reject this Plan pursuant to an order of the Bankruptcy Court shall not be considered "Allowed Claims" under this Plan.

**Allowed Claim** means a Claim that is Allowed under this Plan and, therefore, is not subject to disallowance, defense, reduction, avoidance, setoff, or subordination of any kind. The term "Allowed Claim" also means any Claim to the extent: (a) such Claim is scheduled by Debtor pursuant to the Bankruptcy Code and Bankruptcy Rules in a liquidated amount and not listed as contingent, unliquidated, zero, undetermined, or disputed and no contrary proof of

Claim has been filed; or (b) a proof of Claim was timely filed, or deemed timely filed, with the Bankruptcy Court pursuant to the Bankruptcy Code, the Bankruptcy Rules or any applicable Final Order, or late filed with leave of the Bankruptcy Court; and, with respect to either (a) or (b) above, (i) is not objected to within the period fixed by the Bankruptcy Code, the Bankruptcy Rules or applicable orders of the Bankruptcy Court or (ii) has otherwise been allowed by a Final Order. An "Allowed Claim" includes a previously Disputed Claim to the extent such Disputed Claim becomes Allowed when the context so requires. Except as otherwise expressly provided herein or in a Final Order of the Bankruptcy Court allowing such Claim, the term "Allowed Claim" shall not include (i) any non-compensatory penalties, fines, punitive damages, exemplary damages, multiple damages, or treble damages, and (ii) any other amounts not allowable under the Bankruptcy Code or applicable law.

**Arkel** means Arkel International, LLC.

.

**Arkel Mortgage** means the mortgage of real property in favor of Arkel International, L.L.C. given by Debtor recorded November 6, 2017 and recorded at Book 2017 Page 1880 – 1890 in the Monroe Circuit Court, Arkansas, and ranking only behind the valid and enforceable FMB Mortgage.

**Arkel Secured Claim** means the Claim of Arkel in the amount of $780,011.46 (as of January 28, 2019 plus interest accruing thereafter in the amount of $196.65 per day plus legal fees and costs incurred after January 28, 2019 until the closing of the Sale of the Property), all of which fees and expenses are deemed to satisfy the requirements of Sections 506, 1129(a)(4) and 503(b) of the Bankruptcy Code, as applicable, and which claim is secured by the Arkel Mortgage. The Arkel Secured Claim   shall constitute an Allowed Claim for all purposes in this Bankruptcy Case.

**Arkel Settlement Agreement** means the Settlement Agreement attached as Exhibit DS-3 of the Disclosure Statement which has been approved by orders of the Bankruptcy Court in the respective bankruptcy cases of DDF, Worley and W.

**Assumed Executory Contract** means any Executory Contract assumed by Debtor pursuant to Bankruptcy Code § 365.

**Avoidance Claims** means any Cause of Action which a trustee, debtor-in-possession, an estate, or other legal representative or appropriate party-in-interest may assert, including Causes of Action under Bankruptcy Code §§ 502, 510, 541, 542, 543, 544, 545, 547, 548 through 551, and 553, or under similar or related state or federal statutes, civil law, and common law, including fraudulent transfer laws, and also including, but not limited to, Debtor's rights of setoff, recoupment, contribution, or indemnity in connection with the foregoing (as those terms are defined by the non-bankruptcy law of any relevant jurisdiction) whether or not litigation has been commenced as of the Confirmation Date to prosecute, or pleadings have been filed to assert, such Avoidance Claims.

**Ballot** means the ballot form accompanying the Disclosure Statement upon which holders of Impaired Claims and Equity Interests who are entitled to vote under this Plan shall indicate acceptance or rejection of this Plan in accordance with the Voting Instructions.

**Bankruptcy Case** means the bankruptcy case commenced by Debtor and styled and numbered *In re Delta Duck Farms, L.L.C.*, 18-11268 (Bankr. M.D. La.).

**Bankruptcy Code** means Title 11 of the United States Code, 11 U.S.C. § 101 *et seq.*, as now in effect or hereafter amended.

**Bankruptcy Court** means the United States Bankruptcy Court for the Middle District of Louisiana.

**Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure, FED. R. BANKR. P. 1001 *et seq.*, as promulgated under 28 U.S.C. § 2075, and the Federal Rules of Civil Procedure, FED. R. CIV. P. 1 *et seq.*, and the Local Rules of the Bankruptcy Court, as applicable to the Bankruptcy Case, and as now in effect or hereafter amended.

**Business Day** means any day other than a Saturday, a Sunday, "legal holidays" (as defined under Bankruptcy Rule 9006(a)), or any other day on which banking institutions in Baton Rouge, LA are required or authorized to close by law or executive order.

**Cash** means legal tender of the United States of America.

**Cash Collateral** has the meaning ascribed to such term under Bankruptcy Code § 363(a).

**Causes of Action** means, without limitation, any and all actions, proceedings, causes of action, controversies, liabilities, obligations, rights, rights of setoff, recoupment rights, suits, damages, judgments, accounts, defenses, offsets, powers, privileges, licenses, franchises, Claims, counterclaims, crossclaims, affirmative defenses, and demands of any kind or character whatsoever, whether known or unknown, asserted or unasserted, reduced to judgment or otherwise, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, secured or unsecured, assertable directly or derivatively, existing or hereafter arising, in contract or in tort, in law, in equity, or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Bankruptcy Case, including through the Effective Date. Without limiting the generality of the foregoing, when referring to Causes of Action of Debtor or its Estate, Causes of Action shall include: (i) all rights of setoff, counterclaim, or recoupment and Claims on contracts or for breaches of duties imposed by law or equity; (ii) Claims pursuant to Bankruptcy Code §§ 362, 510, 542, 543, 544 through 550, or 553; (iii) Claims and defenses such as fraud, mistake, duress, usury, and any other defenses set forth in Bankruptcy Code § 558; and,(iv) to the extent not included in subparagraphs (i)-(iii), Avoidance Claims.

**Claim** means any right to payment, as defined in Bankruptcy Code § 101(5).

**Claim Objection Deadline** means, for all Claims, including Administrative Expense Claims, the date of entry of a Final Decree and closing the Bankruptcy Case.

**Class** means any group of Claims or Equity Interests classified herein pursuant to Bankruptcy Code § 1123(a)(1).

**Clerk** means the clerk of the Bankruptcy Court.

**Collateral** means any property or interest in property of the Estate of the Debtor subject to a valid and enforceable lien, charge, or other encumbrance to secure the payment or performance of a Claim, which lien, charge, or other encumbrance is not subject to avoidance under the Bankruptcy Code.

**Confirmation** means the entry of the Confirmation Order, subject to all conditions specified in Article IX hereof having been (i) satisfied or (ii) waived pursuant to Article IX.

**Confirmation Date** means the date of entry by the Clerk of the Confirmation Order.

**Confirmation Hearing** means the hearing to consider Confirmation of this Plan.

**Confirmation Order** means the order Entered by the Bankruptcy Court confirming this Plan pursuant to Bankruptcy Code § 1129.

**Cure Amount** means the amount required to cure any default under an Executory Contract, as provided under Bankruptcy Code § 365, but only to the extent (i) that the holder of an Executory Contract has filed a proof of Claim in accordance with the Bankruptcy Rules setting out such amount and the proof of Claim is not subject to objection by Debtor or Liquidating Trust (ii) the Cure Amount is scheduled by Debtor pursuant to this Plan, or (iii) as the Cure Amount is established by Final Order of the Bankruptcy Court upon timely objection and after hearing.

**Creditor** means any Person who holds a Claim against Debtor.

**Debtor** or **DDF** refers to Delta Duck Farms, L.L.C.

**Disallowed** means, with reference to any Claim or a portion of a Claim, any Claim against any of Debtor that (i) has been disallowed by a Final Order of the Bankruptcy Court, (ii) has been listed by such Debtor in the Schedules, as such Schedules may be amended by Debtor from time to time in accordance with Bankruptcy Rule 1009, as $0.00, contingent, disputed, or unliquidated and as to which no proof of Claim has been filed by the applicable deadline or deemed timely filed pursuant to any Final Order of the Bankruptcy Court, (iii) has been agreed to by the holder of such Claim and the applicable Debtor to be equal to $0 or to be expunged, or (iv) has not been listed by such Debtor on the Schedules and as to which no proof of Claim has been filed by the applicable deadline or deemed timely filed pursuant to any Final Order of the Bankruptcy Court.

**Disclosure Statement** means the disclosure statement relating to this Plan, including, without limitation, all exhibits thereto, as approved by the Bankruptcy Court pursuant to Bankruptcy Code § 1125.

**Disputed** means all Claims: (a) which are listed in the Schedules as disputed, contingent, or unliquidated or (b) as to which (i) a proof of Claim has been filed, (ii) an objection, or request for estimation, has been timely filed (and not withdrawn) by any party-in-interest, and (iii) no Final Order has been entered thereon.  In the event that any part of a Claim is disputed, such Claim in its entirety shall be deemed to constitute a Disputed Claim for purposes of Distribution under this Plan unless a Final Order has been entered allowing such Claim or portion thereof. Without limiting the above, a Claim that is the subject of a pending objection, or any other proceeding seeking to disallow, subordinate, or estimate such Claim, shall be deemed to constitute a Disputed Claim.

**Effective Date** means the first Business Day that is at least one (1) full Business Day after the Confirmation Order becomes a Final Order and all the conditions precedent to the Effective Date described in Article IX, Section 9.2 of this Plan have occurred or have been waived in accordance with the Plan  and which date is designated as the Effective Date in the Notice of Effective Date filed in the Bankruptcy Case.

**Entity** means an entity defined in Bankruptcy Code § 101(15).

**Equity Interest** means any "equity security" as defined under Bankruptcy Code § 101(16) and with respect to this Bankruptcy Case, includes membership interests in the Debtor and from and after the Effective Date, the Liquidating Trust.

**Estate** means the bankruptcy estate of Debtor created upon the commencement of the Bankruptcy Case pursuant to Bankruptcy Code § 541, or thereafter acquired as provided in Bankruptcy Code § 541 or any other applicable section of the Bankruptcy Code.

**Executory Contract** means executory contracts and unexpired leases as such terms are used in Bankruptcy Code § 365.

**Exhibit** means an exhibit, schedule or other document annexed to either this Plan or the Disclosure Statement.

**Final Decree** means the decree contemplated under Bankruptcy Rule 3022.

**Final Order** means an order of the Bankruptcy Court or court of competent jurisdiction which, not having been stayed by order of a court of competent jurisdiction, has become conclusive of all matters adjudicated thereby and is in full force and effect.

**FMB** means Farmers & Merchants Bank.

**FMB Mortgage** means the first priority mortgage and judgment against the Debtor's duck hunting lodge and improvements located on 702 GIS acres in central east Arkansas' Mississippi River Delta, which is deemed valid and enforceable against such property.

**FMB Secured Claim** means the claim of FMB in the Judgment Amount of $4,365,108.20, plus interest accruing on the Judgment Amount at rate of $462.86 per day from September 24, 2018 until paid,  plus all of FMB's reasonable attorney fees and expenses owed on the same, all of which fees and expenses are deemed to satisfy the requirements of Sections

506, 1129(a)(4) and 503 (b) of the Bankruptcy Code, as applicable, which claim is secured by the FMB Mortgage, and which shall constitute an Allowed Claim for all purposes in this Bankruptcy Case...

**General Claim Bar Date** means January 31, 2019.

**General Unsecured Claim** means any Claim against Debtor that is: (i) not an Administrative Expense Claim, Priority Tax Claim, Secured Claim, or Priority Non-Tax Claim; or (ii) otherwise determined by the Bankruptcy Court to be a General Unsecured Claim.

**Governmental Unit** means United States, State, Commonwealth, District, Territory, municipality, foreign state, department, agency, or instrumentality of the United States.

**Guidelines** shall mean the Chapter 11 Operating Guidelines and Reporting Requirements for Region 5 (Amended March 15, 2011) as promulgated by the United States Trustee.

**Impaired** means a Claim or Equity Interest that is impaired within the meaning of Bankruptcy Code § 1124 and applicable case law.

**Insider** means any Person or Entity described under Bankruptcy Code § 101(31).

**IRC** means Title 26 of the United States Code, 26 U.S.C. § 1 *et seq*., as now in effect or hereafter amended.

**IRS** means the Internal Revenue Service.

**Lien** shall have the meaning ascribed to such term under Bankruptcy Code § 101(37) and includes mortgages, security interests, purchase money security interests, privileges, liens, judgments, and encumbrances, whether arising prior to or subsequent to the commencement of the Bankruptcy Case, and whether imposed by agreement, understanding, law, equity, or otherwise.

**Liquidating Trust** shall mean the Liquidating Trust to be created under this Plan in accordance with Section 6.3, infra.

**Liquidating Trustee** shall mean the trustee of the Liquidating Trust, initially set to be R. Patrick Sharp, III.

**Management Fee Claim** means any claim by Dwayne M. Murray for management services provided, if Allowed by the Court.

**Notice of Effective Date** means the notice of occurrence of the Effective Date of the Plan signed by counsel to the Debtor and Arkel and filed in the record of the Bankruptcy Court reflecting that (a) the conditions to the occurrence of the Effective Date have been satisfied or waived, and (b) that the Effective Date has occurred and specifying the date thereof.

**Order** means any order, judgment or decree entered in connection with the Bankruptcy Case by the Bankruptcy Court or any other court of competent jurisdiction.

**Order for Relief** means the Order for relief entered by the Bankruptcy Court in the Bankruptcy Case.

**Per Annum** means for a calendar year of 365 days.

**Person** means any natural person or juridical entity to the broadest extent the term "person" is defined under the laws of the State of Louisiana. Person also includes any Governmental Unit.

**Petition Date** means November 5, 2018.

**Plan** means this *Chapter 11 Plan of Reorganization*, either in its present form or as it may be amended, altered, or supplemented from time to time in accordance with the Plan.

**Plan Supplement** means the compilation of documents and form of documents, schedules, and exhibits to be filed, if necessary, prior to the Voting Deadline, as modified or supplemented prior to the Confirmation Hearing.

**Post-Petition** means any date on or after the Petition Date.

**Pre-Petition** means any date before the Petition Date.

**Priority Claim** means any Claim given priority in payment pursuant to Bankruptcy Code § 507 of the Bankruptcy Code.

**Priority Non-Tax Claim** means any Claim or portion of a Claim given priority in payment pursuant to Bankruptcy Code § 507 of the Bankruptcy Code, but not including Priority Tax Claim and Administrative Expense Claims.

**Priority Tax Claim** means any Claim (or portion of a Claim) of a Governmental Unit entitled to priority under Bankruptcy Code § 507(a)(8).

**Pro Rata** means, at any time, the proportion that the amount of a Claim in a particular Class or Classes (or portions thereof, as applicable) bears to the aggregate amount of all Claims (including Disputed Claims) in such Class or Classes, unless this Plan provides otherwise.

**Professional Compensation Claim** means (i) a Claim for compensation or reimbursement of expenses of a Professional retained in the Bankruptcy Case, and requested in accordance with Bankruptcy Code §§ 326, 327, 328, 330, 331, 503(b), and 1103, and; (ii) any Allowed Management Fee Claim.

**Professional** means a professional person, as that term in used in Bankruptcy Code §§ 327 and 1103.

**Property** means all property or interests in property of Debtor and the Estate of every type and nature pursuant to the Bankruptcy Code *provided however* that in the event of an Alternative Transaction under Section 6.2(b)(ii), the Property conveyed to the Alternative Asset Purchaser shall not include Claims for breaches of duties imposed by law or equity; (ii) Claims

pursuant to Bankruptcy Code §§ 362, 510, 542, 543, 544 through 550, or 553; (iii) Claims and defenses such as fraud, mistake, duress, usury, and any other defenses set forth in Bankruptcy Code § 558; and (iv) to the extent not included in subsections (i)-(iii), Avoidance Claims.

**Proponent** means the Debtor.

**Released Parties** means, collectively, in each case solely in their capacity as such (a) The Farmers & Merchants Bank (b) Arkel International, Inc. and (c) with respect to each entity in sections (a) through (b), each of their respective predecessors, successors, and assigns, current shareholders, affiliates, subsidiaries, principals, employees, agents, officers, directors, managers, trustees, partners, members, professionals, representatives, advisors, attorneys, financial advisors, accountants, investment bankers, and consultants.

**Sale** means the sale, pursuant to the Sale Motion and Order[s] entered thereon, of immovable property including the 702 GIS acres in Central East Arkansas, Mississippi River Delta and the movables, furniture, and equipment located on site of such immovable property.

**Sale Motion** means the motion to sell the immovable property including the 702 GIS acres in Central East Arkansas, Mississippi River Delta and the movables, furniture, and equipment located on site of such immovable property filed at Dkt. 99 within the Bankruptcy Case, as it may be amended from time to time.

**Sale Order** means any Order approving the Sale Motion.

**Schedules** mean the schedules of assets and liabilities, schedules of Executory Contracts, and the statement of financial affairs as the Bankruptcy Court requires a debtor to file pursuant to Bankruptcy Code § 521, the Official Bankruptcy Forms and the Bankruptcy Rules, which have been Filed by Debtor, as they may be amended and supplemented from time to time.

**Secured Claim** means a Claim (i) secured by Collateral, to the extent of the value of such Collateral (A) as set forth in this Plan, (B) as agreed to by the holder of such Claim and Debtor, or (C) as determined by a Final Order in accordance with Bankruptcy Code § 506(a) or (ii) secured by the amount of any valid rights of setoff of the holder thereof under Bankruptcy Code § 553.

**Securities Act** means the Securities Act of 1933, 15 U.S.C. § 77a *et seq*., as now in effect or hereafter amended.

**Security** shall have the meaning ascribed to it in Bankruptcy Code § 101(49).

**Security Interest** means a Lien created by agreement.

**SRB** means Stewart Robbins & Brown, LLC, bankruptcy counsel for Debtor.

**Taxes** means any and all taxes, levies, imposts, assessments or other charges of whatever nature imposed at any time by a Governmental Unit or by any political subdivision or taxing authority thereof or therein and all interest, penalties or similar liabilities with respect thereto.

**Treasury Regulations** means Title 26 of the Code of Federal Regulations, 26 C.F.R. § 1.0-1 *et seq.*, as now in effect or hereafter amended.

**Unimpaired** means a Claim or Interest that is not Impaired within the meaning of Bankruptcy Code § 1124 and applicable case law.

**United States Trustee** means the United States Trustee appointed under 28 U.S.C. § 581(a)(3) to serve in the Middle District of Louisiana.

**Unsecured Claim** means any Claim against Debtor that is not a Secured Claim.

**Unsecured Creditor** means the holder of a General Unsecured Claim.

**Voting Classes** shall mean those Classes of Claims or Equity Interests entitled to vote to accept or reject this Plan, as identified in Article III of the Plan.

**Voting Deadline** means the date stated in the Voting Instructions by which all Ballots must be received by SRB.

**Voting Instructions** mean the instructions for voting on this Plan contained in the section of the Disclosure Statement entitled "VOTING PROCEDURES AND REQUIREMENTS" and in the Ballots.

**Worley Estate** means the bankruptcy estate of Michael A. Worley, No. 18-10017 (Bankr. M.D.La.).

**W** means W Resources, L.L.C.

**W Estate** means the bankruptcy estate of W, No. 18-10798 (Bankr. M.D.La.)

**Rules of Interpretation, Computation of Time and Governing Law**

**(a)**    For purposes of this Plan and the Disclosure Statement: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and the agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) any reference herein to an existing document or exhibit filed, or to be filed, shall mean such document or exhibit, as it may have been or may be amended, modified or supplemented; (d) unless otherwise specified, all references herein to Sections, Articles and Exhibits are references to Sections, Articles and Exhibits hereof or hereto; (e) the words "herein," "hereof" and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (f) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (g) the rules of construction set forth in Bankruptcy Code § 102; and (h) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

**(b)** In computing any period of time prescribed or allowed hereby, the provisions of Bankruptcy Rule 9006(a) shall apply as though this Plan is an order of the Bankruptcy Court. Further, all references to a time of day, a day or a date are references to the time, day or date in Baton Rouge, Louisiana, which is located in the Central Time Zone of the United States of America.

**(c)** Except to the extent that the Bankruptcy Code or Bankruptcy Rules are applicable, and subject to the provisions of any contract, instrument, release, indenture, or other agreement or document entered into in connection herewith, the rights and obligations arising hereunder shall be governed by, and construed and enforced in accordance with, the laws of the State of Louisiana, without giving effect to the principles of conflict of laws thereof.

**(d)** All references in this Plan to monetary figures shall refer to United States of America currency, unless otherwise expressly provided.

<u>EXHIBITS AND SCHEDULES</u>

All Exhibits and Schedules to this Plan and the Disclosure Statement, including this Plan Supplements, are hereby incorporated by reference and made part of this Plan as if set forth fully herein.

## ARTICLE II.

As provided in Bankruptcy Code § 1123(a), Administrative Expense Claims are not classified for purposes of voting on, or receiving distributions under, this Plan. Holders of Allowed Administrative Expense Claims are not entitled to vote on this Plan. Rather, they are treated separately under Bankruptcy Code § 1129(a).

<u>ADMINISTRATIVE EXPENSE CLAIMS</u>

**2.1** <u>**Time for Filing Administrative Expense Claims.**</u> Except as otherwise provided in this Plan or the Confirmation Order, requests for Allowance of Administrative Expense Claims, including, but not limited to, Professional Compensation Claims, for services rendered or work performed prior to the Confirmation Date must be filed and served on all parties entitled to notice thereof no later than the Administrative Expense Claim Bar Date. Holders of Administrative Expense Claims that do not file such requests by the Administrative Expense Claim Bar Date shall be forever barred from asserting such Administrative Expense Claims against the Debtor, the Debtor's Estate or Property of the Estate.

**2.2** <u>**Allowance of Administrative Expense Claims.**</u> An Administrative Expense Claim with respect to which notice has been properly filed and served shall become an Allowed Administrative Expense Claim if no objection is filed on or prior to the Claim Objection Deadline. If an objection is timely filed, the Administrative Expense Claim shall become an Allowed Administrative Expense Claim only to the extent Allowed by Final Order or as such Claim is settled, compromised, or otherwise resolved by Debtor or Liquidating Trust. An Administrative Expense Claim filed after the expiration of the Administrative Expense Claims Bar Date shall not be an Allowed Administrative Expense Claim and no objection by the Debtor or Liquidating Trust shall be required.

### 2.3    Payment of Allowed Administrative Expense Claims.

(a)    Except to the extent any Entity entitled to payment of any Allowed Administrative Expense Claim agrees to a different treatment, all Allowed Claims specified in Bankruptcy Code § 507(a)(2), including, but not limited to, Allowed Professional Compensation Claims, shall be paid  in full in Cash in an amount equal to such Allowed Administrative Expense Claims on the later of (i) the Effective Date, or (ii) as soon as practicable after such Administrative Expense Claim becomes payable pursuant to (a) any agreement between the Debtor or Liquidating Trust and the holder of such Administrative Expense Claim or (b) by Final Order.  Distributions to holders of Allowed Administrative Expense Claims shall come from Property of the Estate but may be satisfied in accordance with the prior agreements, including carve-outs, between the Debtor and Secured Creditors regarding the use of such Secured Creditor's Collateral as approved by the Bankruptcy Court or agreed to by the parties.

(b)    Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by Debtor before the Effective Date, except, (i) Professional Compensation Claims, (ii) outside the ordinary course of business borrowing, and (iii) the amount necessary to provide Cure Amounts for the assumption of Executory Contracts, shall be paid in the ordinary course of business in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing or other documents relating to such transactions, as the Claims accrue, and only such expenses incurred in the operation of the ordinary course of the business of Debtor, Post-Petition, shall be assumed by Debtor as ordinary course of business obligations, to be paid post-Confirmation as these Claims come due.  Persons doing business with Debtor Post-Petition and prior to the Effective Date, whose Administrative Expense Claims represent Claims arising in the ordinary course of business Post-Petition shall not be required to file a request for payment as otherwise required herein.

(c)    Except as otherwise may be provided in the Plan, all Administrative Expense Claims incurred prior to the Effective Date are subject to review and approval by the Bankruptcy Court, after notice, hearing and an opportunity to object.

### 2.4    Voting Rights.  Holders of Allowed Administrative Expense Claims are covered by Bankruptcy Code § 1129(a)(9), and therefore will not be solicited and shall not vote on this Plan.

### PRIORITY CLAIMS

### 2.5    Priority Claims.

(a)    Allowed Priority Claims (both Priority Tax and Non-Tax Claims) are classified under Class 1 of the Plan.  Holders of Allowed Priority Claims shall be paid in full in Cash in an amount equal to such Allowed Priority Claim on the later of (i) the Effective Date, or (ii) as soon as practicable after such Administrative Expense Claim becomes payable pursuant to (a) any agreement between the Debtor or Liquidating Trust and the holder of such Allowed Priority Claim or (b) by Final Order.

(b)    However, holders of an Allowed Priority Tax Claims shall not be entitled to receive any payment on account of any penalty (but the term "penalty" shall not include

statutory interest on such Allowed Priority Tax Claim) arising with respect to or in connection with the Allowed Priority Tax Claim.  Any such Claim or demand for any such penalty shall be subject to treatment in Class 11 relating to General Unsecured Claims.  The holder of an Allowed Priority Tax Claim shall not assess or attempt to collect such penalty from the Debtor, the Debtor's Estate or Property of the Estate other than as a holder of a General Unsecured Claim.

**2.6**    **Not Used.**

**2.7**    **Statutory Fees and Court Costs.**  United States Trustee's fees do not require allowance by the Court and both pre-confirmation and post-confirmation United States Trustee fees shall be paid timely and in full pursuant to all applicable provisions of the Bankruptcy Code and other statutory provisions.  After the Effective Date, the Liquidating Trust shall continue to pay quarterly fees to the United States Trustee and file quarterly reports with the United States Trustee until the Bankruptcy Case is closed, dismissed, or converted.  This requirement is subject to any amendments to 28 U.S.C. § 1930(a)(6) that Congress makes retroactively applicable to confirmed Chapter 11 cases.

**2.8**    **Claims Arising Under Assumed Executory Contracts.**  Except as provided in Article VII of this Plan, Allowed Claims arising under any Assumed Executory Contract shall be paid according to the terms of any Final Order (including the Confirmation Order) of the Bankruptcy Court approving assumption of such Executory Contract, or as otherwise agreed between the holders of such Claims and the Debtor or the Liquidating Trust.

## ARTICLE III.

### SUMMARY

The categories of Claims and Equity Interests listed below classify Claims and Equity Interests for all purposes, including voting, confirmation, and distribution pursuant hereto and pursuant to Bankruptcy Code §§ 1122 and 1123(a)(1).  A Claim or Equity Interest shall be deemed classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Equity Interest qualifies within the description of such different Class.  A Claim or Equity Interest is in a particular Class only to the extent that such Claim or Equity Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.

| Class | Claim | Status | Voting Rights |
|-------|-------|--------|---------------|
| 1 | Priority Claims | Unimpaired | No |
| 2 | Farmers & Merchants Bank | Impaired | Yes |
| 3 | Arkel International, LLC | Impaired | Yes |

| 4 | General Unsecured Claims | Impaired | Yes |
| 5 | Equity Interests | Impaired | Yes |

### CLASSIFICATION AND TREATMENT

**3.1     Class 1 – Priority Claims.**

    **(a)**    Class 1 consists of consists of Allowed Priority Claims.

    **(b)**    Holders of Allowed Priority Claims shall be paid in full in Cash in an amount equal to such Allowed Priority Claim on the later of (i) the Effective Date, or (ii) as soon as practicable after such Administrative Expense Claim becomes payable pursuant to (a) any agreement between the Debtor or Liquidating Trust and the holder of such Allowed Priority Claim or (b) by Final Order.

    **(c)**    Class 1 is Unimpaired and is presumed to accept the Plan.

**3.2     Class 2 – Farmers & Merchants Bank Secured Claim**

    **(a)**    Class 2 consists of the FMB Secured Claim which is an Allowed Claim under this Plan.

    **(b)**    In full and final satisfaction of the Allowed FMB Secured Claim against the Debtor, and in accordance with the implementation provisions of Section 6.2, *infra*, the Allowed FMB Secured Claim shall either be (a) assumed by Arkel, or (b) paid in full in cash at closing of the Sale from the proceeds of the Sale.

    **(c)**    Class 2 is Impaired.  FMB shall be entitled to vote to accept or reject this Plan to the extent of the Allowed Class 2 Claim.

**3.3     Class 3 – Arkel International, LLC Secured Claim**

    **(a)**    Class 3 consists of the Arkel Secured Claim, which is an Allowed Claim under this Plan.

    **(b)**    In full and final satisfaction of the Allowed Arkel Secured Claim, and in accordance with the implementation provisions of Section 6.2, *infra*, the Arkel Secured Claim shall be satisfied either through assumption of the FMB Secured Claim and credit bid by Arkel for the Property as more fully described in Section 6.2, infra, or in the event Arkel is not the winning bidder for the Property, in full and in cash at the closing of the Sale from the proceeds of the Sale (unless Arkel determines in its discretion to accept less than payment in full of the Arkel Secured Claim).  Arkel shall not be entitled to an Allowed Class 4 General Unsecured Claim for the balance of any deficiency after satisfaction of the Allowed Class 3 Claim from the proceeds of the Sale.

    **(c)**    Class 3 is Impaired.  Arkel shall be entitled to vote to accept or reject this Plan to the extent of the Allowed Class 3 Claim.

3.4     <u>**Class 4 – General Unsecured Claims**</u>.

(a)     Class 4 consists of Allowed General Unsecured Claims.  The Debtor and Liquidating Trust reserve the right to object to allowance or classification of any Class 4 Claims.

(b)     Holders of Allowed Class 4 Claims shall be paid the full amount of any Allowed Class 4 Claim, without interest, in accordance with the provisions of Section 6.4, infra.

(c)     Class 4 is Impaired.  Holders of Allowed General Unsecured Claims are entitled to vote on this Plan to the extent of the Allowed Class 4 Claim.

3.5     <u>**Class 5 –Equity Interests**</u>.

(a)     Class 5 consists of all Equity Interests in the Debtor.

(b)     In accordance with the implementation provisions of Section 6.2, infra, Allowed Equity Interests in the Debtor shall receive any property and proceeds remaining, if any, after distribution to all Allowed Claims in accordance with the distribution scheme set forth in Section 6.4, infra.

(c)     Class 5 is Impaired and shall be entitled to vote on the Plan.

3.6     <u>**Treatment Satisfies Allowed Claims**</u>.

(a)     The treatment in the Plan is in full and complete satisfaction of the legal, contractual and equitable rights that each Entity holding an Allowed Claim or Interest may have in or against Debtor or their interests in property.  Unless provided otherwise in the Plan, this treatment supersedes and replaces any agreements or rights those Entities have in or against Debtor or their interests in property.  All distributions under the Plan will be tendered to the Person holding the Allowed Claim in accordance with the terms of the Plan.

(b)     **EXCEPT AS SPECIFICALLY SET FORTH IN THE PLAN, NO DISTRIBUTIONS WILL BE MADE ON ACCOUNT OF AND NO RIGHTS WILL BE RETAINED BY THE HOLDER OF (I) ANY CLAIM THAT IS NOT AN ALLOWED CLAIM OR (II) ANY INTEREST THAT IS NOT AN ALLOWED INTEREST.**

3.7     <u>**Satisfaction of Claim Prior to Confirmation**</u>

In the event that an Allowed Secured Claim is satisfied in full prior to confirmation, the Classification for such Allowed Secured Claim specified above, and treatment provided therein, shall be mooted and shall be deemed stricken from the Plan.

**ARTICLE IV.**

4.1     <u>**Voting Classes**</u>.  There are four (4) voting Classes under this Plan.  Holders of Allowed Claims and Equity Interests in Classes 2 through 5 are Impaired, and therefore are entitled to vote to accept or reject this Plan.

**4.2** **Voting Rights as to Confirmation of Plan; Necessity of Allowance of Claims.** If a Claim is a Disputed Claim prior to the Confirmation Date, such Disputed Claim shall not be entitled to vote with respect to this Plan unless such Claim is estimated, for voting purposes, by Final Order of the Bankruptcy Court.

**4.3** **Acceptance by Impaired Classes.** An Impaired Class of Claims shall have accepted this Plan if (a) the holders (other than any holder designated under Bankruptcy Code § 1126(e)) of at least two-thirds (2/3) in amount of the Allowed Claims actually voting in such Class have voted to accept this Plan, and (b) the holders (other than any holder designated under Bankruptcy Code § 1126(e)) of more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept this Plan.

**4.4** **Presumed Rejection or Acceptance of this Plan.** No Class is presumed to reject this Plan.

**4.5** **Non-Consensual Confirmation.** Debtor reserves the right to seek Confirmation of this Plan under Bankruptcy Code § 1129(b), to the extent applicable, in the event of a rejection by any of the Voting Classes.

## ARTICLE V.

**5.1** **Prosecution of Objections to Claims.** Prior to the Effective Date, the Debtor and after the Effective Date, the Liquidating Trust, shall have the exclusive authority on or before the Claim Objection Bar Date to file objections, settle, compromise, withdraw or litigate to judgment objections to Disputed Claims or Equity Interests. Hearings on any such objections shall be fixed for hearing at least thirty (30) days after the filing of the objections or at such other time as may be fixed by the Bankruptcy Court. Debtor or Liquidating Trust shall litigate to judgment, settle, or withdraw objections to Disputed Claims, and with regard to objections pending as of Confirmation, Debtor or Liquidating Trust shall be entitled to litigate to judgment, settle, or withdraw objections to Disputed Claims without the necessity of notice or hearing. From and after the Effective Date, the Liquidating Trust may settle or compromise any Disputed Claim without approval of the Bankruptcy Court. Debtor and Liquidating Trust also reserve the right to resolve any Disputed Claims outside the Bankruptcy Court under applicable governing law.

**5.2** **Estimation of Claims.** Debtor or Liquidating Trust  may, at any time, request that the Bankruptcy Court estimate any disputed, contingent or unliquidated Claim pursuant to Bankruptcy Code § 502(c) regardless of whether Debtor has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any disputed, contingent, or unliquidated Claim, that estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, Debtor may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim. All of the aforementioned Claims and objection, estimation, and resolution procedures are cumulative and not necessarily

exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

**5.3**     **Allowance of Claims.**

**(a)**     Except as to Claims Allowed by the Plan, or as otherwise expressly provided herein or in any order by the Bankruptcy Court prior to the Effective Date (including the Confirmation Order), no Claim (except for the FMB Secured Claim and the Arkel Secured Claim, which are  Allowed Claims for all purposes) shall be deemed Allowed, unless and until such Claim is deemed Allowed under the Bankruptcy Code or the Bankruptcy Court enters a Final Order in the Bankruptcy Case allowing such Claim.

**(b)**     Except as to Claims Allowed by the Plan, or any order entered by the Bankruptcy Court prior to the Effective Date (including the Confirmation Order, the order approving the Arkel Settlement Agreement, and the Sale Order), Debtor and Liquidating Trust after Confirmation will have and retain any and all rights and defenses Debtor had with respect to any Claim as of the Order for Relief.

**5.4**     **Controversy Concerning Impairment.**  If a controversy arises as to whether any Claims or Equity Interests, or any Class of Claims or Equity Interests, are Impaired under the Plan, the Bankruptcy Court shall determine such controversy on or before the Confirmation Date.

**5.5**     **Claim Bar Date.**  Creditors whose Claim was scheduled as disputed, contingent, or unliquidated, or that did not file a proof of Claim on or before the General Claim Bar Date shall receive no distribution under this Plan and such Claim shall forever be barred and prohibited from asserting a Claim against the Debtor and Liquidating Trust.

## ARTICLE VI.

### MEANS OF IMPLEMENTATION

**6.1**     **Discontinued Corporate Existence.**  From and after the Effective Date, Debtor shall continue in existence but the membership interests existing as of the Petition Date may be cancelled or transferred to the Liquidating Trust.

**6.2**     **The Sale of Property.**  The Debtor shall sell its movable (personal) (other than cash on hand, intangibles and proceeds thereof and proceeds of the Sale) and immovable (real) property pursuant to any Sale Order entered by the Court arising from the Sale Motion. The Sale Motion requires the sale of the Debtor's movable and immovable property for a minimum purchase price of $4,910,000.00 (the "***Purchase Price***"[1]).  The Initial Bidder for the purchase of the property is Arkel, and the Purchase Price consists of Arkel's assumption of the Debtor's loan owed to FMB in an amount necessary to pay the Allowed FMB Secured Claim in

---

[1]     According to the Sale Motion, the minimum bid is $5,110,000.00.  However, provisions are made for the possibility that the purchase price can exceed such figure.  For purposes of this Plan, the term "Purchase Price" shall mean the final and highest price accepted by the Court pursuant to Order entered granting the Sale Motion.

full, plus a credit bid of a portion of the Arkel Allowed Secured Claim in the amount of $200,000.00, plus cash in the amount of $210,000.00 (the "***Cash Proceeds***").

The Cash Proceeds shall be the transferred to the Liquidating Trust and held by the Liquidating Trustee in separate or segregated accounts.   The Worley Estate asserts or has asserted that the movable property located at the Debtor's immovable property is the Worley Estate's property.   While the Worley Estate, through its trustee, has consented to the sale of the movables located on or at the Debtor's immovable property free and clear of its interests to the Buyer of the Property, the Worley Estate has reserved the right to assert that the Cash Proceeds (whether all or a portion thereof), are proceeds of a sale of the Worley Estate's property, and are, in turn, property of the Worley Estate.   All rights are reserved to the Worley Estate to make such claim to entitlement to the Cash Proceeds, and nothing herein shall be deemed a finding, judgment or preclude in any way the right of the Worley Estate to make a claim to entitlement to the Cash Proceeds.   The Cash Proceeds shall be distributed only in accordance with further Orders of the Bankruptcy Court as to ownership of such property.

### 6.3    The Liquidating Trust

### (a)    Orderly Liquidation.

i.    Upon the Effective Date, the Liquidating Trustee shall enter into a Trust Agreement, a form of which is attached hereto as Plan Supplement "1," which will assign ownership of Property of the Estate, inclusive of all tangible and intangible property, movable or immovable and Causes of Action (collectively, the "***Trust Assets***")[2] to the Liquidating Trust. Such transfer shall be deemed to have irrevocably transferred the Trust Assets to the Liquidating Trust, for and on behalf of beneficiaries of the Liquidating Trust, with no reversionary interest in the Trust Assets for the Debtor or any equity holder in Debtor except as specifically provided herein.   Pursuant to the Confirmation Order, R. Patrick Sharp, III, shall be appointed the Liquidating Trustee by the Bankruptcy Court who each shall exercise control over Liquidating Trust Assets in accordance with the Trust Agreement.   Upon completion of all of the duties of the Liquidating Trustee, their discharge, and the closing of this case, any balance of the Liquidating Trustee's Reserved Amount shall be transferred to the registry of the Bankruptcy Court as unclaimed funds.

ii.    The Liquidating Trustee shall have full authority to take any steps necessary to administer Trust Assets, to the extent empowered by ¶ 1.3 of the Trust Agreement, including, without limitation, the duty and obligation to pursue and settle any Causes of Action. Upon such transfer (which, as stated above, shall occur on the Effective Date), the Debtor shall have no further rights or obligations with respect thereto.   The Liquidating Trustee shall neither be required nor obligated to seek approval from the Bankruptcy Court in the performance of his/her duties as Liquidating Trustee.

---

[2]      The term "Trust Assets" shall not include the Cash Proceeds unless and until an Order is entered by the Bankruptcy Court establishing ownership of same by the Debtor and/or Liquidating Trust or amicable agreement is reached between the Liquidating Trust and the Worley Estate as to division and entitlement to such Cash Proceeds. Until such time, the Cash Proceeds shall be held by the Liquidating Trust in a segregated or separate account subject to further Orders of the Bankruptcy Court regarding ownership thereof.

iii.    All costs and expenses associated with the administration of the Liquidating Trust, including those rights, obligations and duties described this Plan, shall be borne by Liquidating Trust, to enable the Liquidating Trustee to perform his duties as Liquidating Trustee under the Trust Agreement and the Plan.

iv.    The Liquidating Trustee may retain such law firms, including counsel to the Debtor, accounting firms, experts, advisors, consultants, investigators, appraisers, auctioneers or other professionals as they may deem necessary (collectively, the "***Trust Professionals***"), in their sole discretion, and at the sole expense of the Liquidating Trust, to aid in the performance of their responsibilities pursuant to the terms of the Plan including, without limitation, the liquidation and distribution of Liquidating Trust, and Liquidating Trustee may pay the fees and costs of such Trust Professionals, costs of administration of the Liquidating Trust, and the compensation of the Liquidating Trustee in the ordinary course of business and without Bankruptcy Court authority.

v.    For federal income tax purposes, it is intended that the Liquidating Trust be classified as a trust under Treasury Regulation 301.7701-4 and that such trust be owned by its beneficiaries. Accordingly, for federal income tax purposes, it is intended that the beneficiaries be treated as if they had received a distribution of an undivided interest in Trust Assets and then contributed such interests to Liquidating Trust. The Trust Agreement shall (i) state that the primary purpose of the Trust is to liquidate the Trust Assets with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, its liquidating purpose and (ii) contain a fixed or determinable termination date that is generally not more than five (5) years from the date of creation of Liquidating Trust, which termination date may be extended for one or more finite terms subject to the approval of the Bankruptcy Court upon a finding that the extension is necessary to its liquidating purpose. Each such extension must be approved by the Bankruptcy Court within two (2) months before the beginning of the extended terms.

vi.    The Liquidating Trustee shall be responsible for filing all federal, state and local tax returns for Liquidating Trust. Liquidating Trustee shall file all federal tax returns for the Liquidating Trust as a grantor trust pursuant to Treasury Regulation 1.671-4.

vii.    The Liquidating Trustee shall make all distributions from Trust Assets in accordance with the provisions of and priorities accorded under the Plan.

viii.    The Liquidating Trustee shall receive as compensation for services provided an hourly fee of $260.00 per hour.

ix.    The duties of the Liquidating Trustee shall be limited to those provided herein, or within the Trust Agreement. The Liquidating Trustee shall have no liability to any Person or Entity, including Creditors, for actions taken as Liquidating Trustee, unless such actions were grossly negligent or intentional.

x.    The Liquidating Trustee shall be the representative of the Estate for purposes of Bankruptcy Code § 1123(b)(3), and shall be entitled to take all actions, and assert all powers and

rights of a trustee under the Bankruptcy Code, including pursuit of avoidance actions under Chapter 5 of the Bankruptcy Code, and objecting to proofs of Claim.

**(b)     Initial Funding**.

The Liquidating Trust shall be funded initially with any and all Cash and other Property possessed by the Debtor as of the Effective Date.  Notwithstanding the foregoing, the Liquidating Trust may not use any portion of the Cash Proceeds unless and until an Order of the Bankruptcy Court is entered (or mutual agreement between the parties is reached) establishing ownership of and entitlement to the Cash Proceeds by the Liquidating Trust.

**6.4     Distribution Scheme**

(a)     **Trust Assets**.  Except as otherwise provided in this Plan, the Trust Assets collected by the Trustee shall be distributed by the Liquidating Trustee as follows and on a Pro Rata basis within each Class:

- Upon receipt of the Initial Funding, or as soon thereafter as an Administrative Expense Claim becomes and Allowed Administrative Expense Claim, the Liquidating Trustee shall pay from Trust Assets (save and except the Cash Proceeds until an Order is entered, or agreement of the parties reached, recognizing the right of the Liquidating Trust to such Cash Proceeds), in full, the amount of such Allowed Administrative Expense Claim.

- Thereafter, the Liquidating Trustee shall pay from the Trust Assets, other than the Cash Proceeds, the amounts necessary to satisfy the Allowed Class 1.

- Trust Assets remaining after payment of Allowed Administrative Expense Claims and Allowed Class 1 Claims shall be deemed "***Net Liquidation Trust Proceeds***."

- Any Net Liquidation Trust Proceeds shall be distributed as follows:

    o  <u>First</u>, in payment in full of any Trust Expenses incurred by the Liquidating Trust, including but not limited to compensation of the Liquidating Trustee and Trust Professionals.

    o  <u>Second</u>, in payment in full of Allowed Administrative, Class 1 and/or Class 4 Claims, if any such claims were not paid in full from the Initial Funding.

    o  <u>Third</u>, after all such payments required to be made for Trust Expenses and if Allowed Claims classified herein, if any, have been satisfied in full, then any remaining Net Liquidation Trust Proceeds shall be distributed to the Holder of the Class 5 Equity Interest[s], W.

(b)    **Cash Proceeds**.  Should the Bankruptcy Court enter an Order (or the parties reach amicable accord) determining ownership of and entitlement to the Cash Proceeds, the Liquidating Trust shall comply with such Order and distribute the Cash Proceeds in accordance with such Order[s], except, however, the Liquidating Trustee may surcharge the Cash Proceeds to pay Trust Expenses related to the disposition of the Cash Proceeds, including but not limited to litigation efforts, costs of maintenance of separate or segregated accounts, wire and other fees associated with same but only to the extent that Trust Assets other than the Cash Proceeds are insufficient to cover such costs and expenses.  In the event that the Bankruptcy Court determines (or the parties agree) that the Cash Proceeds constitute property of the Debtor and/or Liquidating Trust, whether in whole or in part, then the Liquidating Trustee may treat such portion, whether in whole or in part, as Trust Assets and distribute same in accordance with the provisions of Section 6.4(a), *supra*.

### 6.5    Funding for Disbursements

Funds needed to make Cash payments on the Effective Date under this Plan shall come from either Trust Assets, including cash on hand, or from the proceeds of the transactions contemplated under Section 6.2, *supra*.

### 6.6    Dates of Distributions

Any Distributions to be made by the Liquidating Trust to Holders of Allowed Claims and Interests shall be made in accordance with the distribution scheme set forth in Section 6.4 of the Plan, but only at such time or times as the Debtor or Liquidating Trust, as applicable, determines, in its sole discretion, to be prudent and reasonable.

### 6.7    Management and Continued Existence of the Debtor.

Until the Effective Date, the Debtor shall continue in existence only to the extent such continued existence is necessary for the Liquidating Trust to administer the Trust Assets.  Patrick R. Sharpe shall be the Liquidating Trustee, and in that capacity may act for the Debtor to the extent such action is deemed necessary or advisable.

### 6.8    Validity of Existence and Transfer of Property.

Confirmation of the Plan shall constitute a determination by the Bankruptcy Court that the Debtor validly exists, and is properly organized

### 6.9    Causes of Action and Avoidance Actions.  Except to the extent such Cause of Action or Avoidance Action are released and/or deemed waived under the Plan, as of the Effective Date, pursuant to Bankruptcy Code § 1123(b)(3), any and all Causes of Action, shall be property of the Liquidating Trust, and shall vest in the Liquidating Trust.  The Causes of Action outlined below shall vest in the Liquidating Trust.

The following Causes of Action shall be retained:

1. Actions arising under Chapter 5 of the Bankruptcy Code, other than any claims against FMB and/or Arkel, which are released..

2. Claims for the recovery of any and all accounts receivable of the Debtor.

3. Subject to the provisions and limitations set forth in this Plan, the right to object to any Claim or Interest filed by a Holder of such Claim or Interest, or to seek to recharacterize or subordinate such Claim or Interest, including but not limited to actions to invalidate or otherwise dispute the validity of any mortgage, lien or security interest claimed as perfecting an interest in the Debtor's property by any purported secured creditor.

4. Claims of entitlement to the Cash Proceeds.

**6.10** <u>**Surrender of Instruments**</u>.   Not later than the twenty-eighth (28th) day following the Effective Date, each holder of a promissory note evidencing a Claim which is not an Allowed Claim shall surrender such note to the Liquidating Trustee and such note shall be canceled or shall establish the unavailability of such note.

**6.11** <u>**Approvals**</u>.   On the Effective Date, all matters provided for under this Plan that would otherwise require approval of Debtor or Liquidating Trust, including the adoption and effectiveness of the restated articles of organization or a restated operating agreements, and the election or appointment of managers of the Debtor shall be deemed to have occurred and shall be in effect from and after the Effective Date without any requirement of further action by the Debtor or Liquidating Trust or their respective members or managers.

## ARTICLE VII.

**7.1** <u>**Treatment of Executory Contracts**</u>.

(a) Any Executory Contracts not specifically assumed as provided for in the Plan, or within assumption proceedings pending as of the Confirmation Hearing shall be deemed rejected by Confirmation as of the Confirmation Date.

(b) All Claims arising from the rejection of Executory Contracts must be evidenced by properly filed proofs of Claim. Counterparties to any rejected Executory Contract shall have thirty (30) days from the entry of the Confirmation Order to assert a claim for damages resulting from the rejection of the respective Executory Contract. Any Claims not filed on or before such date shall be forever barred and prohibited from assertion against Debtor, the Liquidating Trust, the Estate, Property of the Estate, or former Property of the Estate. Unless otherwise ordered by the Bankruptcy Court, all Claims arising from rejection of Executory Contracts shall be General Unsecured Claims and treated as provided in Class 4.

(c) If any Assumed Executory Contracts exist as of the date of Confirmation or proceedings are pending to assume and/or assign any Executory Contract as of the date of Confirmation, then the Confirmation Order shall constitute an Order authorizing the assignment of any Assumed Executory Contract from Debtor to the Liquidating Trust effective upon the later of (a) the Effective Date or (b) the date of the entry of a Final Order within any assumption

proceeding pending as of the Confirmation Hearing. The Confirmation Order shall also constitute an Order and findings of the Bankruptcy Court concluding that all conditions and requirements for assignment of any Assumed Executory Contract have been satisfied or waived unless an objection thereto has been filed prior to the deadline to filing an objection to confirmation of the Plan. The Debtor does not believe any such executory contracts have been assumed, or proceedings to assume an executory contract will have been initiated as of Confirmation.

     **(d)** Any Executory Contract listed on Debtor's Schedule G[3] which has neither been assumed nor rejected as of the Confirmation Date of the Plan will be deemed to have been rejected by Debtor as of the Confirmation Date, without further order of the Bankruptcy Court. The Debtor anticipates the following Executory Contracts will be assumed: ***NONE***.

     **7.2**   **Arkel Settlement Agreement**   Except to the extent specifically provided in the Plan, if any obligations set forth in the Settlement Agreement have not been fully performed, then any such remaining obligations will continue to be binding on all parties thereto and shall not be discharged or affected by the Confirmation of the Plan.

## ARTICLE VIII.

     **8.1**   **Completion of Distributions.**   If any Distribution or any other act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

     **8.2**   **Name and Address of Holder.**   For purposes of all Distributions, the Liquidating Trust shall be entitled to rely on the name and address of the holder of each Allowed Claim or Equity Interest as shown any timely filed proof of Claim and, if no such proof of Claim is filed, as shown on the Schedules, except to the extent that the Liquidating Trust first receives adequate written notice of a transfer or change of address, properly executed by the holder or its authorized agent.

     **8.3**   **Means of Cash Payment.**   Cash payments made pursuant to this Plan shall be U.S. funds, by check drawn on a domestic bank, or by wire transfer from a domestic bank, which the Liquidating Trust deems appropriate.

     **8.4**   **Delivery of Distributions.**   Distributions to holders shall be made to the addresses set forth in the proof of Claim filed by such holders (or the last known address of such Holder if no Proof of Claim is filed, or if the Liquidating Trust has been notified, in writing, of a change of address). If any holder's Distribution is returned as undeliverable, no further Distributions to such holder shall be made unless and until the Liquidating Trust is notified, in writing, of such holder's then current address, at which time Distributions shall be made to such holder without interest.

---

[3] Schedule G was filed on December 3, 2018 [P-39] and is attached to the Disclosure Statement as ***Exhibit "DS-2."***

**8.5**   **Right of Offset.**   Pursuant to Bankruptcy Code § 553 or applicable non-bankruptcy law, the Liquidating Trust may setoff against any Allowed Claim (except for the FMB Secured Claim and the Arkel Secured Claim) or Equity Interest and the Distributions to be made pursuant hereto on account of such Claim or Equity Interest (before any Distribution is made on account of such Claim or Equity Interest), the claims, equity interests, rights, and causes of action of any nature that the Estate or the Liquidating Trust, as applicable, may hold against the Holder of such Allowed Claim or Equity Interest; *provided*, *however*, that neither the failure to effect such a setoff nor the Allowance of any Claim or Equity Interest hereunder shall constitute a waiver or release by the Debtor or Liquidating Trust , as applicable, of any such claims, equity interests, rights, and causes of action that the Debtor or the Liquidating Trust, as applicable, may possess against such Holder, except as specifically provided herein.  No Entity shall retain the right of offset, set off, recoupment, or any other right, Claim, Lien or Secured Claim as against the Estate or the Liquidating Trust, as applicable, under Bankruptcy Code § 553 or otherwise unless such Entity is the Holder of a Claim that has been timely filed under Bankruptcy Code § 502 and such Claim is an Allowed Claim.

## ARTICLE IX.

**9.1**   **The Effective Date.**   The Effective Date shall be the first Business Day that is at least one (1) full Business Day after the Confirmation Order becomes a Final Order and all the conditions precedent to the Effective Date described below have been satisfied or waived and which date is designated as the Effective Date in the Notice of Effective Date filed in the Case.

**9.2**   **Conditions Precedent to Effective Date.**   The following are conditions precedent (or conditions satisfied contemporaneously with or immediately prior to the occurrence of the Effective Date) to the occurrence of the Effective Date, each of which must be satisfied or  waived in accordance with Article IX of this Plan.

   **(a)**   **Confirmation Order.**   The Confirmation Order, in form and substance acceptable to Debtor as the same may have been modified in accordance herewith, must have become a Final Order.

   **(b)**   **Authorizations.**   Debtor, shall have received all authorizations, consents, regulatory approvals, rulings, letters, no-action letters, opinions or documents, if any, that are determined by Debtor,  to be necessary to implement this Plan.

   **(c)**   **Execution of Plan Supplement Documents.**   Debtor shall have received all executed Plan Supplement Documents, if any, which shall be held in trust by Debtor pending the Effective Date.

   **(d)**   **Payments.**   (1) The Debtor shall have made all payments which are required to be made by the Debtor on the Effective Date;  (2)  the closing of the Sale.

   **(e)**   **Arkel Settlement Agreement and Related Matters.**   The Arkel Settlement Agreement shall have been approved by Final Orders of the Bankruptcy Court in the bankruptcy cases of Worley, W and DDF: the Debtor shall have fee simple title to the Property as described in the Arkel Settlement Agreement, including the 702 GIS acres in Central east Arkansas  Mississippi River Delta and the movables, furniture, and equipment on site as of the

date of execution of the Arkel Settlement Agreement, free and clear of any and all liens, claims, encumbrances and interests except as may be specifically provided in the Plan, the Arkel Settlement Agreement shall be in full force and effect and there shall have been no material adverse change in the condition of the Property since the date the motion to approve the Arkel Settlement Agreement was filed in the W bankruptcy case.

(f)    **Sale Order.**    The Bankruptcy Court shall have entered the Sale Order, which shall not have been stayed.

(g)    **Deadline For the Effective Date**. The occurrence of the Effective Date shall have occurred by April 30, 2019, or such later date as may be agreed upon in writing by the Debtor, FMB, Arkel or any other person designated as a purchaser under the Sale Order.

9.3    **Waiver of Conditions.**    The conditions precedent to the Effective Date may be waived or modified by Debtor but only with the written consent of FMB and Arkel.

9.4    **Effects of Confirmation.**

(a)    **Revesting of Assets and Related Matters.**    On the Effective Date, Property of the Estate shall vest in the Liquidating Trust and as of the Effective Date,

(i)  all Property of the Estate or the Debtor shall be free and clear of all Liens, Claims, Interests and other encumbrances of Holders of Claims, except as provided in this Plan (including, with regard to the Cash Proceeds, the claim of entitlement thereto by the Worley Estate);

(ii) The Arkel Settlement Agreement is in full force and effect and has been approved by Final Orders of the Bankruptcy Court in the bankruptcy cases of Worley, W and DDF;

(iii)  the Debtor has fee simple title to the Property described in the Arkel Settlement Agreement, including the 702 GIS acres in Central east Arkansas  Mississippi River Delta and the movables, furniture, and equipment on site as of the date of execution of filing the motion to approve the Arkel Settlement Agreement in the W bankruptcy case, free and clear of any and all liens, claims,  encumbrances  and interests except as may be specifically provided in the Plan.

(b)    **Findings by the Bankruptcy Court.**  In addition to the findings set forth in Bankruptcy Code § 1129(a), the Bankruptcy Court shall make such findings of fact and conclusions of law that are reasonable and necessary to effectuate the provisions of this Plan. Such findings and conclusions may include, but are not limited to:

i.    Debtor and Liquidating Trust are authorized and directed to take all actions necessary or appropriate to enter into, implement and consummate the contracts, instruments, releases, leases, indentures, and other agreements or documents created in connection with this Plan.

ii.       Any claim, right, cause, or cause of action of Debtor, the Estate, or Liquidating Trust, or any holder of any Claim, that is waived or deemed waived pursuant to this Plan or pursuant to the Disclosure Statement, shall have been waived and released upon the Effective Date, subject to the reservations or right and avoidance power set forth in this Plan.

iii.      Cause exists to abrogate the stay of the effect of the Confirmation Order in accordance with Bankruptcy Rule 3020(e).

iv.      Debtor proposed this Plan in good faith.

**(c)** **Approval of Plan Supplement.**  Confirmation shall constitute approval of any Plan Supplement and such transactions as are provided by the exhibits comprising such Plan Supplement.

## ARTICLE X.

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of this Plan and the Confirmation Order shall be immediately effective and enforceable and deemed binding upon Debtor and any and all holders of Claims against or Equity Interests in Debtor (regardless of whether such Claims or Equity Interests are deemed to have accepted or rejected this Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in this Plan, each Entity acquiring property under this Plan or the Confirmation Order, and any and all non-Debtor parties to Executory Contracts with Debtor.  All Claims and debts shall be fixed, adjusted, or compromised, as applicable, pursuant to this Plan regardless of whether any holder of a Claim or debt has voted on this Plan.

Subject to the limitations contained in this Plan, the Debtor prior to the Confirmation Date and the Liquidating Trust after the Confirmation Date reserve the right to modify this Plan as to immaterial terms and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not resolicit votes on such modified Plan.  Subject to certain restrictions and requirements set forth in Bankruptcy Code § 1127 and Bankruptcy Rule 3019 and those restrictions on modifications set forth in this Plan, Debtor and ,after the Effective Date the Liquidating Trust, expressly reserve their rights to immaterially alter, amend, or modify this Plan one or more times after Confirmation and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to immaterially alter, amend, or modify this Plan, or remedy any defect or omission, or reconcile any inconsistencies in this Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of this Plan.

Entry of a Confirmation Order shall mean that all immaterial modifications or amendments to this Plan occurring after the solicitation thereof and prior to the Confirmation Date are approved pursuant to Bankruptcy Code § 1127(a) and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

## ARTICLE XI.

Under 28 U.S.C. §§ 157(b) and 1334, and Bankruptcy Code §§ 105(a) and 1142, and notwithstanding entry of the Confirmation Order and occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, and related to, the Bankruptcy Case and this Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

      a.     Allow, disallow, determine, liquidate, classify, estimate, or establish the priority or secured or unsecured status of any Claim or Equity Interest, including the resolution of any request for payment of any Administrative Expense Claim and the resolution of any objections to the allowance or priority of Claims or Equity Interests;

      b.     Hear and determine all Professional Compensation Claims;

      c.     Effectuate performance of and payments under the provisions of this Plan;

      d.     Hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters arising out of, under, or related to, the Bankruptcy Case;

      e.     Enter such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of this Plan or Confirmation Order and all contracts, instruments, releases, and other agreements or documents created in connection with this Plan or the Confirmation Order;

      f.     Hear and determine disputes arising in connection with the interpretation, implementation, consummation, or enforcement of this Plan or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with this Plan or the Confirmation Order;

      g.     Consider any modifications of this Plan, cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order;

      h.     Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any entity with implementation, consummation, or enforcement of this Plan or the Confirmation Order;

      i.     Enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated;

      j.     Hear and determine any matters arising in connection with or relating to this Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with this Plan, the Disclosure Statement, or the Confirmation Order;

      k.     Enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Bankruptcy Case;

l.      Recover all assets of Debtor, Liquidating Trust and Property of the Estate, wherever located;

m.      Hear and determine matters concerning state, local, and federal taxes in accordance with Bankruptcy Code §§ 346, 505, and 1146;

n.      Hear and determine all disputes involving the existence, nature, or scope of Debtor's discharge;

o.      Hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code; and

p.      Enter a final decree closing the Bankruptcy Case.

## ARTICLE XII.

**12.1    Severability of Provisions of this Plan.**   If, prior to Confirmation, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of Debtor or any other party-in-interest, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of this Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**12.2    Successors and Assigns.**   The rights, benefits, and obligations of any Person named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such Person.

**12.3    Notices.**   Any notice, request, or demand required or permitted to be made or provided to or upon Debtor or Arkel under this Plan shall be (a) in writing, (b) served by (i) certified mail, return receipt requested, (ii) hand delivery, (iii) overnight delivery service, or (iv) first class mail, and (c) deemed to have been duly given or made when actually delivered or when actually received, addressed as follows:

Debtor's counsel:

P. Douglas Stewart, Jr., Esq.
STEWART ROBBINS & BROWN, LLC
301 Main St., Ste. 1640
Baton Rouge, LA 70801
E-mail: dstewart@stewartrobbins.com

With a copy to:

    Dwayne M. Murray, Esq.
    MURRAY & MURRAY, LLC
    301 Main St., Ste. 800
    Baton Rouge, LA 70801
    E-mail: dmm@murraylaw.net

Arkel International, Inc.:

    Arkel International, Inc
    1055 Convention Street
    Baton Rouge, LA 70802

With a copy to:

    William H. Patrick, III, Esq.
    HELLER, DRAPER, PATRICK, HORN & MANTHEY, L.L.C.
    650 Poydras Street, Suite 2500
    New Orleans, Louisiana 70130-6175
    E-mail: wpatrick@hellerdraper.com

Farmers & Merchants Bank:

    Farmers & Merchants Bank
    c/o Bradley A. Chambless
    708 South Main St.
    Stuttgart, AR 72160

With a copy to:

    Stephen P. Strohschein, Esq.
    MCGLINCHEY STAFFORD
    301 Main St., Ste. 1400
    Baton Rouge, LA 70801

Debtor and/ or Arkel may change such address(es) by notice to all holders of Claims and Equity Interests given in the same manner.

    **12.4**   **Compromise and Settlement.**  Pursuant to Bankruptcy Rule 9019(a), Debtor and Liquidating Trust may compromise and settle various Claims against them or claims they may have against other Persons.  Debtor and Liquidating Trust expressly reserve the right (and except as otherwise provided herein, with Bankruptcy Court approval, following appropriate notice and opportunity for a hearing) to compromise and settle Claims against them and claims that they may have against other Persons up to and including the Effective Date.  For the avoidance of doubt, confirmation of the Plan constitutes a release of any and all claims of the Debtor and the

Liquidating Trust against FMB and Arkel except for any rights specifically reserved in writing in the Plan.

**12.5** **Section 1146 Exemption.** Pursuant to Bankruptcy Code § 1146(c), any transfers of property pursuant hereto, which shall by Confirmation be deemed transfers pursuant to this Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax or other similar tax or governmental assessment in the United States, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

**12.5** **Post-Confirmation Reporting Requirements.** After Confirmation, Debtor or Liquidating Trust shall continue to report to the United States Trustee on or before the fifteenth (15th) day of each calendar quarter the total of all disbursements for the prior calendar quarter up to the date an order is entered either granting final decree, converting the case to Chapter 7 or dismissing the case. Prior to entry of an order of final decree, the Liquidating Trust will report the total disbursements up to the date of the decree insofar as not previously reported. However, nothing herein shall be construed as a waiver of the right of Debtor or Liquidating Trust to request that, after the Effective Date, the Bankruptcy Case be administratively closed.

## ARTICLE XIII.

**13.1** **Effect of Confirmation.** 11 U.S.C. § 1141 SHALL APPLY IN FULL AND THE DEBTOR SHALL NOT BE ENTITLED TO A DISCHARGE.

**13.2** **Automatic Stay.** The automatic stay of Bankruptcy Code § 362 shall continue in effect until the Effective Date.

**13.3** **INJUNCTION.** THERE SHALL BE AN INJUNCTION TO THE FULL EXTENT ALLOWED UNDER BANKRUPTCY CODE §§ 1141, AND ALL HOLDERS OF CLAIMS AND EQUITY INTERESTS OR OTHER PERSONS BOUND BY THE PROVISIONS OF THE PLAN SHALL BE ENJOINED FROM PURSUING ANY ACTION ON ACCOUNT OF OR RELATED TO ANY CLAIM OR EQUITY INTEREST THROUGH ANY CONDUCT OR PROCEEDING WHATSOEVER, WITH RESPECT TO SUCH HOLDER'S CLAIMS OR WITH RESPECT TO ANY EXCULPATED CLAIMS.

FURTHERMORE, NO CREDITOR POSSESSING A LIEN RIGHT IN, TO, OR UPON PROPERTY OF THE ESTATE OR PROPERTY OF THE LIQUIDATING TRUST MAY CONTINUE OR COMMENCE ANY ACTION TO SIEZE, SELL, DISTRAIN, RETAIN, RESTRAIN, REPLEVIN, SEQUESTER, ATTACH, OR OTHERWISE OBTAIN POSSESSION, CUSTODY, CONTROL, OWNERSHIP OR EFFECTUATE A TRANSFER OF OWNERSHIP OF PROPERTY OF THE ESTATE OR PROPERTY OF THE LIQUIDATING TRUST THROUGH NON-BANKRUPTCY LAW PROCEDURES WITHOUT FURTHER ORDER OF THE BANKRUPTCY COURT.

**13.4    Releases.**    For good and valuable consideration, the adequacy of which is hereby confirmed, and except as otherwise provided in this Plan or the Confirmation Order, as of the Effective Date, the Debtor, in its individual capacity and as debtor in possession, and the Liquidating Trustee on behalf of the Liquidating Trust shall be deemed to forever release, waive and discharge all claims, obligations, suits, claims of offset, judgments, damages, demands, debts, rights, Causes of Action, Avoidance Actions and liabilities (other than their respective rights to enforce this Plan and the contracts, instruments, releases, indentures and other agreements or documents executed and/or delivered in connection therewith) against any of the Released Parties, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part on any act, omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtor, the Liquidating Trust, the Released Parties, the Bankruptcy Case, or this Plan or the Disclosure Statement, that could have been asserted by or on behalf of Debtor or its Estate or the Liquidating Trust, whether directly, indirectly, derivatively or in any representative or any other capacity, other than claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action and liabilities arising out of or relating to any act or omission of a Released Party that constitutes gross negligence, fraud, willful misconduct or breach of fiduciary duty (if any).

**13.5    Effect of Injunction and Exculpation**

Other than as limited by the foregoing injunction (section 13.3) and exculpation (13.4) provisions of this Plan, or any other provision of the Plan, no third-person legally responsible with the Debtor for taxes owed to any governmental tax authority is released from any liability they may have to governmental tax authority in relation to any Allowed Priority Tax Claims. Such third-parties shall remain liable for any unpaid amounts to the same extent to which applicable law may impose personal liability upon them.  Immediately upon the effective date, governmental tax authorities shall have the right immediately and without prior Bankruptcy Court approval to enforce collection of unpaid Allowed Priority Tax Claims from any person legally responsible with the Debtor and may do so using any means available under applicable law.

Other than as limited by the foregoing injunction (section 13.3) and exculpation (13.4) provisions of this Plan, or any other provision of the  Plan, neither the Plan, the Confirmation Order nor any documents executed or filed in connection with the Plan, the Confirmation Order or the Bankruptcy Case, shall release, impair or affect any claims or causes of action possessed by the Holder of a Claim against any non-Debtor person who may be liable with the Debtor on account of such Claim.

**13.6    Default and Cure.**    In the event the Liquidating Trust fails to make any payment or perform any material obligation in accordance with this Plan or under any instrument issued under this Plan, the affected claimant shall give written notice to the Liquidating Trust specifically identifying the alleged default, who shall have 15 days from the receipt of such written notice to either (a) cure any such alleged default or (ii)  contest in writing (which may be an email to the affected claimant) the existence of any such alleged default. If an alleged default (or whether there has been a cure thereof) is contested, the Liquidating Trust shall have ten (10)

days after the date of any judicial determination that such default does exist to cure the default. If a default is not timely contested or, if timely contested and judicially determined to exist, is not timely cured to the satisfaction of the Bankruptcy Court, only then may such claimant proceed to seek to lift the stay or injunction and enforce its rights and remedies pursuant to applicable law. Any dispute over the existence of a default or cure or any remedy as a result thereof shall be determined by the Bankruptcy Court upon motion and notice.

   **13.7** **Binding Effect.** This Plan shall be binding upon and inure to the benefit of Debtor, the Liquidating Trust, all present and former holders of Claims against, and Equity Interests in, the Debtor, and all other parties-in-interest in the Bankruptcy Case.

   **13.8** **Revocation or Withdrawal.** Debtor reserves the right to revoke or withdraw this Plan prior to the Confirmation Date or substantial consummation and to file subsequent plans. If Debtor revokes or withdraws this Plan, or if Confirmation or substantial consummation does not occur, then: (1) this Plan shall be null and void in all respects; (2) except for the Sale Order, the Arkel Settlement Agreement, which shall continue to be binding, any settlement or compromise embodied in this Plan (including the fixing or limiting to an amount certain of any Claim or Equity Interest or Class of Claims or Equity Interests), assumption and assignment or rejection of Executory Contracts effected by this Plan, and any document or agreement executed pursuant to this Plan, shall be deemed null and void and (3) nothing contained in this Plan shall: (a) constitute a waiver or release of any Claims or Equity Interests; (b) prejudice in any manner the rights of Debtor or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by Debtor or any other entity.

   **13.9** **Plan Supplement.** Any and all forms of promissory notes and other documents necessary to implement this Plan shall be submitted to the Bankruptcy Court for approval within fourteen (14) days after Confirmation, upon notice to affected holders of Claims.


Baton Rouge, Louisiana, U.S.A.
Dated:  Wednesday, March 13, 2019

         **STEWART ROBBINS & BROWN, LLC**

         /s/ P. Douglas Stewart, Jr.
         **P. Douglas Stewart, Jr. (24661)**
         **Brandon A. Brown (25592)**
         301 Main Street, Suite 1640
         Baton Rouge, LA 70801
         Telephone: (225) 231-9998
         Facsimile: (225) 709-9467

         *Attorneys for Delta Duck Farms, LLC*

**Plan Supplement - 1**

## DELTA DUCK FARMS, LLC

## LIQUIDATING TRUST AGREEMENT

This *Liquidating Trust Agreement* (the "Trust Agreement"), dated as of _____, 2019 by and among Delta Duck Farms, LLC, through its duly authorized member, W Resources, LLC, in turn acting through its duly authorized Manager, Dwayne M. Murray (in this capacity, the "Manager"), on the one hand, and _____ on the other hand (in this capacity, the "Liquidating Trustee"), is executed in connection with the *First Amended Chapter 11 Plan of Liquidation* [Docket # _____] as subsequently amended and modified (the "Plan"). Capitalized terms used in this Trust Agreement and not otherwise defined herein shall have the meanings ascribed to them in the Plan.

### W I T N E S S E T H

WHEREAS, a voluntary chapter 11 case was commenced by Delta Duck Farms, LLC ("Debtor") on November __, 2018 under Case Number 18-11268 (the "Case") in the United States Bankruptcy Court for the Middle District of Louisiana (the "Bankruptcy Court");

WHEREAS the commencement of the case created an estate pursuant to 11 U.S.C. §541, et seq. (the "Estate"), consisting of all property owned by the Debtor as of the date of entry of the Order for Relief, and property which the Estate acquired after the commencement of the Case, inclusive of Causes of Action (as defined on p. _____ of the Plan).

WHEREAS on _____, 2019 the Debtor filed the Plan;

WHEREAS, on _____, 2019, the Bankruptcy Court entered an order confirming the Plan (the "Confirmation Order");

WHEREAS, the Plan provides for the creation of a post-confirmation liquidation trust (the "Trust") to hold and administer the Trust Assets (defined below), including but not limited to the Causes of Action, and the proceeds of the foregoing, to distribute the assets or proceeds of such assets in accordance with the terms of the Plan to holders of Secured Claims with Allowed Claims and liens against specific assets and to the holders of Allowed Unsecured Claims (the "Trust Beneficiaries"), and to take all actions necessary to wind down and close the Estate, all in accordance with the terms of this Trust Agreement and the Plan;

WHEREAS, the name of the Trust shall be the "**Delta Duck Farms, LLC, Liquidating Trust**;"

WHEREAS, "Trust Assets" means the Causes of Action, cash on hand, and any other assets, movable or immovable, real or personal, owned as of the Effective Date or acquired thereafter pursuant to the terms of the Plan. This Trust Agreement is executed to establish the Trust and to facilitate the Plan;

WHEREAS, the Trust is established for the sole purpose of liquidating the Trust Assets for the benefit of the Trust Beneficiaries (including holders of Disputed Claims that become Allowed Claims) in accordance with Treasury Regulation Section 301.7701-4(d), with no objective or

authority to continue or engage in the conduct of a trade or business except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Trust including the wind down and closure of the Estate;

WHEREAS, the Trust is intended to qualify as a Trust within the meaning of Treasury Regulation Section 301.7701-4(d) for United States federal income tax purposes;

WHEREAS, the respective powers, authority, responsibilities and duties of the Co-Trustees shall be governed by this Trust Agreement, the Plan, the Confirmation Order, other applicable orders issued by the Bankruptcy Court, and any obligations under Louisiana law;

WHEREAS, this Trust Agreement is intended to supplement, complement and implement the Plan; provided, however, that except as otherwise expressly stated herein, if any of the terms and/or provisions of this Trust Agreement conflict with the terms and/or provisions of the Plan, then the Plan shall govern.

NOW, THEREFORE, in consideration of the premises and the mutual covenants and agreements contained herein and in the Plan, the Debtor, and Liquidating Trustee agree as follows:

## ARTICLE 1

## ESTABLISHMENT OF THE TRUST

1.1    <u>Establishment of Trust</u>.   Liquidating Trustee hereby accepts his appointment. Pursuant to the Plan, the Debtor and the Liquidating Trustee hereby establish the Trust on behalf of the Trust Beneficiaries.  The Liquidating Trustee agrees to accept and hold the Trust Assets in trust for the Trust Beneficiaries subject to the terms of this Trust Agreement, and agree to assume his role and duties as provided in this Trust Agreement.

1.2    <u>Purpose of the Trust</u>.  The Trust shall be established for the purpose of liquidating the Trust Assets and taking all actions necessary to wind down and close the Estate, in accordance with Treasury Regulations Section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business. Accordingly, the Liquidating Trustee shall, in an expeditious but orderly manner, liquidate and convert to Cash the Trust Assets, make distributions, and not unduly prolong the duration of the Trust. The Trust shall not be deemed a successor-in-interest of the Debtor for any purpose other than as specifically set forth herein or in the Plan.

1.3    <u>Transfer of Assets and Rights to the Liquidating Trustee</u>.  Except as provided otherwise in the Plan, as of the Effective Date the Debtor, on behalf of the Estate, hereby transfers, assigns, conveys and delivers to the Liquidating Trustee, (a) all of its rights with respect to Claims and Causes of Action, (b) the attorney-client privilege related to Claims and Causes of Action so transferred, (c) all of its right, title, and interest in the Trust Assets, and (d) all of its rights with respect to the Trust Assets, and the Liquidating Trustee on behalf of the Trust hereby assumes and agrees that all such Trust Assets will be transferred to the Trust.

1.4    <u>Title to Trust Assets</u>.

(a)     The transfer of the Trust Assets to the Trust shall be made for the benefit of the Trust Beneficiaries, whether the Claims of the Trust Beneficiaries are Allowed on or after the Effective Date of the Plan. In this regard, the Trust Assets will be treated for tax purposes as being transferred by the Debtor and its Estate to the Trust Beneficiaries, and then by the Trust Beneficiaries to the Trust in exchange for beneficiary interests in the Trust, which interests shall be distributed by the Liquidating Trustee to the Trust Beneficiaries in exchange for their Allowed Claims in accordance with the Plan and as set forth in Article 3 below. Upon the transfer of the Trust Assets, the respective Trustee shall succeed to all of the Debtor's and Estate's right, title and interest in and to the Trust Assets as described in ¶ 1.3(a) and (b), *supra*, and the Debtor and the Estate will have no further interest in or with respect to the Trust Assets or this Trust.

(b)     For all United States federal income tax purposes, all parties (including, without limitation, the Debtor, the Reorganized Debtor, the Estate, the Liquidating Trustee, and the Trust Beneficiaries) shall treat the transfer of Trust Assets to the Trust described in this Section 1.4 and in the Plan (and any subsequent transfers of Assets) as a transfer to the Trust Beneficiaries followed by a deemed transfer by such Trust Beneficiaries to the Trust, and the beneficiaries of this Trust shall be treated as the grantors and owners hereof.

1.5    <u>Reliance</u>.  The Liquidating Trustee may rely upon the Debtor's filed schedules and statements of financial affairs and all other information provided by the Debtor or its representatives to the Liquidating concerning Claims filed against the Debtor and the Debtor's reconciliation, if any, and other documents supporting such reconciliation.

1.6    <u>Valuation of Trust Assets</u>.  As reasonably determined from time to time by the Liquidating Trustee in his good faith and reasonable judgment, valuation of the Trust Assets transferred to the Trust shall be used consistently by the Liquidating Trustee and the Trust Beneficiaries for all federal income tax purposes.  The Liquidating Trustee, the Estate and the Trust Beneficiaries agree that (i) the value of the Causes of Action on the date of their transfer to the Trust shall be zero dollars; and (ii) the transfer of the Causes of Action to the Trust shall "close" the transaction for tax purposes as to the Debtor with respect to any subsequent receipt of proceeds by the Trust in connection with the Causes of Action or investment earnings thereon.

1.7    <u>Governance of the Trust</u>.  The Trust shall be governed by the Liquidating Trustee subject to the provisions set forth in this Trust Agreement and Louisiana law.  The Liquidating Trustee's powers are exercisable solely in a fiduciary capacity consistent with, and in furtherance of, the purposes of this Trust and not otherwise, except that the Liquidating Trustee may deal with the Trust Assets for their own account as provided herein.

1.8    <u>Appointment of the Liquidating Trustee</u>.  The Liquidating Trustee has been selected pursuant to the terms of the Plan. Confirmation of the Plan shall constitute the Bankruptcy Court's approval of _____, as Liquidating Trustee who shall hold such position until his removal, resignation, or death.

1.9    Bond.  The Liquidating Trustee shall serve without bond.

1.10    Funding of the Trust.  The Liquidating Trustee may from time to time make withdrawals from unencumbered Trust Assets in amounts and at times that the Liquidating Trustee deems necessary or appropriate to fund any and all costs and expenses that the Liquidating Trustee and the Trust incur subsequent to the Effective Date in accordance with this Trust Agreement and the Plan.

## ARTICLE 2

## THE LIQUIDATING TRUSTEE

2.1    Role of the Liquidating Trustee.  In furtherance of and consistent with the purpose of the Trust and the Plan, the Liquidating Trustee shall, for the benefit of the Trust Beneficiaries and subject to the provisions set forth in this Trust Agreement and the Plan: (i) have the power and authority to hold, manage, and distribute the Trust Assets; (ii) have the power and authority to hold, manage, and distribute the Cash or non-Cash Trust Assets obtained through the exercise of his and the Affiliated Claims Administrator's power and authority; and (iii) have the power and responsibility to take all actions necessary to wind down and close the Estate, including objecting to any and all Claims by or against any person or entity not affiliated with the Debtor, file all required tax returns, and file and receive approval of a final report from the Bankruptcy Court, all as may be provided for in additional and further detail below. In all circumstances, the Liquidating Trustee shall act in the best interests of all Trust Beneficiaries of the Trust and in furtherance of the purpose of the Trust.

2.2    Not Used.

2.3    Authority of Liquidating Trustee.  In connection with the administration of the Trust, subject to and except as otherwise set forth in this Trust Agreement or the Plan, the Liquidating Trustee is authorized to perform any and all acts necessary or desirable to accomplish the purposes of the Trust and the roles to which they are assigned herein.

2.4    Limitation of Liquidating Trustee's Authority.  The Liquidating Trustee shall have no power or authority except as set forth in this Trust Agreement or in the Plan.  Notwithstanding anything herein to the contrary, the Liquidating Trustee shall not be authorized to engage in any trade or business, and shall only take such actions consistent with the orderly liquidation of the Trust Assets as are required or contemplated by applicable law, the Plan and this Trust Agreement, and the actions necessary to wind down and close the Estate and dissolve the Trust.

2.5    Books and Records.  The Liquidating Trustee shall maintain, in respect of each's responsibility to the Trust, books and records relating to the Trust Assets (including the Causes of Action) and income of the Trust and the payment of expenses of, and liabilities of claims against or assumed by, the Trust in such detail and for such period of time as may be necessary to enable it to make full and proper accounting in respect thereof.  Such books and records shall be maintained on a modified cash or other comprehensive basis of accounting necessary to facilitate compliance with the tax reporting requirements of the Trust.  Except as otherwise may be expressly provided in this Trust Agreement, nothing in this Trust Agreement requires the Liquidating Trustee to file any accounting or seek approval of any court with respect to the administration of the Trust,

or as a condition for managing any payment or distribution out of the Trust Assets. Subject to all applicable privileges, the Trust Beneficiaries shall have the right, in addition to any other rights they may have pursuant to this Trust Agreement, under the Plan or otherwise, upon twenty (20) days' prior written notice to the Liquidating Trustee, to request a reasonable inspection of the books and records held by the Liquidating Trustee; provided, however, that all reasonable costs associated with such inspection shall be paid by such requesting Trust Beneficiary; provided further, however, that if so requested, such Trust Beneficiary shall have entered into a confidentiality agreement satisfactory in form and substance to the Liquidating Trustee, and make such other arrangements as may be reasonably requested by the Liquidating Trustee. One (1) year after dissolution of the Trust or the Debtor entities, the Liquidating Trustee is authorized to destroy any and all books and records without further notice or Bankruptcy Court order, unless the Bankruptcy Court has ordered otherwise; provided, however, that the Liquidating Trustee may move the Bankruptcy Court for entry of an order authorizing the destruction of any and all books and records prior to expiration of the one (1) year period following dissolution of the Trust.

2.6    <u>Additional Powers</u>.  Except as otherwise set forth in this Trust Agreement or in the Plan, and subject to the Treasury Regulations governing creditors' trusts and the retained jurisdiction of the Bankruptcy Court as provided for in the Plan, but without prior or further authorization, the Liquidating Trustee may control and exercise authority over the relevant Trust Assets and over the protection, conservation and disposition thereof. No Person dealing with the Trust shall be obligated to inquire into the authority of the Liquidating Trustee in connection with the protection, conservation or disposition of the Trust Assets.

2.7    <u>Tax and Reporting Duties of the Liquidating Trustee</u>.  The Liquidating Trustee shall file returns for the Trust as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a) and comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority, including, without limitation, any requirements imposed with respect to Distributions hereunder and under the Plan. The Liquidating Trustee shall also file (or cause to be filed) any other statements, returns, reports or disclosures relating to the Trust that are required by any governmental authority, and all such statements, returns, reports or disclosures shall be prepared in reasonable detail in accordance with all applicable laws.

2.8    <u>Compliance with Laws</u>.  Any and all Distributions of Trust Assets and proceeds of borrowings, if any, shall be in compliance with applicable laws, including, without limitation, applicable federal and state securities laws.  The Liquidating Trustee may withhold a Distribution from any Trust Beneficiary if the Liquidating Trustee is unable, after reasonable investigation, to obtain taxpayer identification information for any Trust Beneficiary sufficient to permit the Liquidating Trustee to make any Distribution in compliance with applicable law.

2.9    <u>Confidentiality</u>.  The Liquidating Trustee shall forever hold in strict confidence and not use for personal gain any material, non-public information of or pertaining to the Trust Assets, or the operation of the Trust and any other entity to which any of the Trust Assets may at any time relate.

2.10    <u>Compensation of the Liquidating Trustee</u>.  As compensation for services as Liquidating Trustee, and under any other agreements to which the Liquidating Trustee is a party

as contemplated by the Plan, the Liquidating Trustee shall receive as compensation for services an hourly fee of $_____ per hour.

2.11    Costs and Expenses of the Liquidating Trustee.  All costs and expenses of the Liquidating Trustee and Trust shall be borne by and as a charge against unencumbered Trust Assets.  The Liquidating Trustee may prosecute Claims and Causes of Action by employing counsel on terms acceptable to the Liquidating Trustee.  The Liquidating Trustee, in conjunction with counsel, shall undertake reasonable best efforts to review each Cause of Action for which he is responsible before such claims are filed, to determine the viability, chance of success, and potential recovery on such claim; and the Liquidating Trustee shall not be under any obligation to file a particular claim if that review indicates that, as to that claim, the chance of success is low and/or the possible recovery on the claim is minimal.

2.12    Compensation Procedures.  The Liquidating Trustee and all professionals employed by the Liquidating Trustee shall be entitled to payment of their fees and reimbursement of all reasonable expenses on a monthly basis by the Liquidating Trustee from the Trust Assets.

2.13    Reliance by Liquidating Trustee.

(b)    The Liquidating Trustee may rely, and shall be protected in acting upon, any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document believed by him/her to be genuine and to have been signed or presented by the proper party or parties including, but not limited to, the Claims Register maintained by the Clerk of the Bankruptcy Court in the Cass; and

(c)    persons dealing with the Liquidating Trustee shall look only to the Trust Assets to satisfy any liability incurred by the Liquidating Trustee to such person in carrying out the terms of this Trust Agreement, and the Liquidating Trustee shall not have any personal obligation to satisfy any such liability, except to the extent that actions taken or not taken after the Effective Date by the Liquidating Trustee are determined by a Final Order to be solely due to the Liquidating Trustee's gross negligence, fraud or willful misconduct.

(d)    the Liquidating Trustee may consult with and shall not be liable for any actions taken or suffered by the Liquidating Trustee in accordance with the advice of such counsel or other professionals, and may also consult with and rely upon accountants and former consultants or advisors of the Debtor, present and former officers, directors and consultants of the Debtor or its affiliates or subsidiaries.

2.14    Investment and Safekeeping of Trust Assets.  The right and power of the Liquidating Trustee to invest Trust Assets, the proceeds thereof, or any income earned by the Trust, shall be limited to the right and power that a Trust, within the meaning of Treasury Regulations Section 301.7701-4(d), is permitted to hold, pursuant to the Treasury Regulations, or any

modification in the IRS guidelines, whether set forth in IRS rulings, other IRS pronouncements or otherwise.

2.15    Authorization to Expend Trust Assets.  The Liquidating Trustee may expend the Trust Assets:  (a) as reasonably necessary to maintain the value of the Trust Assets during liquidation: (b) to pay all costs and expenses of the Trust (including, without limitation, any taxes imposed on the Trust); and (c) to satisfy all other liabilities incurred or assumed by the Trust (or to which the Trust Assets are otherwise subject) in accordance with this Trust Agreement and the Plan.

2.16    Termination.  The duties, responsibilities and powers of the Liquidating Trustee will terminate on the date the Trust is dissolved under applicable law in accordance with the Plan, Article 8 of this Trust Agreement, or by an order of the Bankruptcy Court.

2.17    Reliance.  Any Person dealing with the Liquidating Trustee shall be fully protected in relying upon the Liquidating Trustee's certificate or instrument signed by the Liquidating Trustee that he or she has authority to take any action under this Trust.

2.18    Liquidating Trustee's Funds.  No provision of this Trust Agreement or the Plan shall require the Liquidating Trustee to expend or risk their own funds or otherwise incur any financial liability in the performance of any of their duties as Liquidating Trustee hereunder or under the Plan, or in the exercise of any of their rights or powers, if the Liquidating Trustee shall have reasonable grounds for believing that repayment of funds or adequate indemnity or security satisfactory to the Liquidating Trustee against such risk or liability is not reasonably assured to the Liquidating Trustee.

# ARTICLE 3

## DISTRIBUTIONS

3.1    Distribution; Withholding. In accordance with this Article 3, and in the discretion of the Liquidating Trustee as to timing, the Liquidating Trustee shall distribute from the Trust to each Trust Beneficiary Cash on hand (including, without limitation, all net Cash income plus all net Cash proceeds from the liquidation of Trust Assets, including, without limitation, as Cash for this purpose, all permissible investments described the Trust to the Trust Beneficiaries, after making reserve for Disputed Claims as provided below; provided, however, that no distribution to an individual unit holder will be required unless such aggregate distribution would be at least $25.00.

3.2    Payment of Distributions.

3.2.1 *Provisions of Plan Shall Control*.  Notwithstanding anything to the contrary herein, the provisions of the Plan governing the distribution rights, restrictions, and priorities of payment, specifically the provisions of the Plan governing distribution of Net Liquidation Trust Proceeds as set forth in the Plan, are copied herein by reference, and shall be followed by the Liquidating Trustee in making Distributions to Trust Beneficiaries.

3.2.2 *Limitations on Payments.*  Except as expressly provided in the Plan, prior to making any Distribution to the Trust Beneficiaries, the Liquidating Trustee may retain such amounts as deemed reasonably necessary to: (i) meet contingent liabilities and to maintain the value of the Trust Assets of the Trust during liquidation; and (ii) to pay reasonable estimated expenses.  The Liquidating Trustee may withhold from amounts distributable to any Person any and all amounts, determined in the Liquidating Trustee's reasonable sole discretion, required by any law, regulation, rule, ruling, directive or other governmental requirement.

3.3    Manner of Payment of Distributions.  All Distributions to Trust Beneficiaries from the Trust shall be payable only to Trust Beneficiaries of record and, as to each such Trust Beneficiary within a Class then entitled to payment, in amounts equal to such Trust Beneficiaries' *pro rata* portion of the Distribution.  All Distributions to Trust Beneficiaries from the Trust shall be payable in Cash by wire transfer, check or such other method as the Liquidating Trustee deems appropriate under the circumstances.  All payments of the costs and expenses of the Trust shall be paid in Cash from unencumbered assets by wire transfer, check or such other method as the Liquidating Trustee deems appropriate under the circumstances.

3.4    Distributions on Business Days.  Any payment or Distribution due on a day other than a Business Day shall be made, without interest, on the next Business Day.

3.5    Filing and Prosecution of Objections to Claims and of Causes of Action; Creditor Action.  The Liquidating Trustee shall have the exclusive right to file and prosecute any objections to Claims and any Causes of Action on behalf of the Trust, including all Avoidance Actions and derivative Causes of Action.  The Liquidating Trustee shall have the authority to compromise, settle or otherwise resolve all objections to any Claim or Cause of Action filed or asserted without approval of the Bankruptcy Court, subject to ¶ 3.5(A), *infra*.   Unless otherwise ordered by the Bankruptcy Court, the Liquidating Trustee shall file and serve all objections to Claims no later than the Claims Objection Deadline.

A.    Nonetheless, any creditor shall have the right to send written request to the Liquidating Trustee to pursue a Claim or Cause of Action along with information that such creditor may possess that supports the Claim or Cause of Action.  Upon receipt of such request, the Liquidating Trustee shall advise the creditor within 30 days as to whether the Liquidating Trustee intends to pursue the Claim or Cause of Action.  If the Liquidating Trustee does not advise that he intends to pursue the Claim or Cause of Action, a creditor may, by written notice to the Liquidating Trustee, pursue, and have standing to pursue, any such claim on behalf of the Trust; provided however that the creditor shall be required to pay the expenses and costs associated with such claim, which costs and expenses shall be solely recoverable from the amounts recovered on account of the claim and not from the Trust.

3.6    Estimation of Claims.  The Liquidating Trustee may at any time request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtor or the Liquidating Trustee previously have objected to such Claim or whether the Bankruptcy Court has ruled on any such objection. The Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any

appeal relating to any such objection. Subject to the provisions of section 502(j) of the Bankruptcy Code, in the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, the amount so estimated shall constitute the maximum allowed amount of such Claim. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Liquidating Trustee may pursue supplementary proceedings to object to the allowance of such Claim. All of the aforementioned objection, estimation and resolution procedures are intended to be cumulative and not necessarily exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

3.7    <u>Reserve for Disputed Claims</u>.

(a)    No Cash or other property shall be distributed on account of any Disputed Claim or, if less than the entire Claim is a Disputed Claim, the portion of a Claim that is Disputed, unless and until such Claim becomes an Allowed Claim. The Liquidating Trustee shall reserve and segregate Cash sufficient to pay holders of Disputed Claims their Ratable Portion, if any, of the Available Cash distributed to Trust Beneficiaries. Any such Cash reserved shall be held and segregated by the Trust for the benefit of holders of Disputed Claims. In the event a Disputed Claim is ultimately Allowed, the holder of such previously Disputed Claim shall, within sixty (60) days, be entitled to payment of such holder's Ratable Portion of any Distributions previously made.

(b)    The Liquidating Trustee may make such determinations on Disputed Claims as are appropriate, and as further subject to any Bankruptcy Court authorization as may be requested. The Liquidating Trustee is authorized, as often as desired but at least annually, to make determinations as to the valuation of the Disputed Claims.

(c)    Upon the Effective Date, any claims that are the subject of dispute shall be recognized in the Disputed Claims Reserve until Final Order of the Bankruptcy Court or other binding resolution of the status of the Disputed Claim.

3.8    <u>No Distribution in Excess of Allowed Amounts</u>. Notwithstanding anything to the contrary contained in the Plan or this Trust Agreement, no Trust Beneficiary shall receive Distributions of a value which exceed the amount of such Trust Beneficiary's Allowed Claim as of the Petition Date, plus accrued interest if such is provided for in the Plan. The foregoing shall not limit holders of Disputed Claims from receiving Distributions on account of accrued interest as provided herein and in the Plan, if such holders' Disputed Claims becomes Allowed.

3.9    <u>*De Minimis* Distributions</u>. Notwithstanding anything to the contrary contained in the Plan or this Trust Agreement, the Liquidating Trustee shall not be required to distribute Cash to the holder of an Allowed Claim if the amount of cash to be distributed on account of such Claim is less than $25. Any holder of an Allowed Claim on account of which the amount of Cash to be distributed is less than $25 shall have such Claim discharged and shall be forever barred from asserting any such Claim against the Debtor, the Trust, or their respective property. Any Cash not

distributed pursuant to this provision shall be the property of the Trust, free of any restrictions thereon. The Liquidating Trustee may, in his sole discretion, remit any Cash not distributed or otherwise utilized by the Trust pursuant to this Section 3.9 of the Trust Agreement shall be paid into the registry of the Bankruptcy Court.

3.10    <u>Setoffs</u>.  The Liquidating Trustee may set off against any Distributions to be made to a Trust Beneficiary hereunder, claims, rights and Causes of Action of any nature that the Co-Trustee (solely in their roles as trustees under this Trust Agreement) may at any time hold against such Trust Beneficiary; provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim under or in accordance with the Plan shall constitute a waiver or release by the Liquidating Trustee of any such Claim, right and Causes of Action that the Liquidating Trustee may at any time possess against such Trust Beneficiary.

3.11    <u>Disputed Payments</u>.  If any dispute arises as to the identity of a holder of an Allowed Claim who is to receive any Distribution, the Liquidating Trustee may, in lieu of making such Distribution to such Person, make reserve for such Distribution.  Such Distribution shall be held in reserve until the disposition thereof shall be determined by order of the Bankruptcy Court or other court of competent jurisdiction or by written agreement among the interested parties to such dispute.

3.12    <u>Unclaimed Distributions</u>.

(a)    Any Unclaimed Distributions shall be held and reserved by the Trust for the benefit of the Trust Beneficiaries entitled thereto under the terms of this Trust Agreement and the Plan.  All such Unclaimed Distributions shall be held for a period of sixty (60) days following the filing of the applicable Notice of Distribution and during such period shall be released from the Trust and delivered to the Trust Beneficiaries entitled thereto only upon presentation of proper proof by such Trust Beneficiaries of such entitlement.  At the end of sixty (60) days following the filing of the relevant Notice of Distribution of any Unclaimed Distributions, the Trust Beneficiaries theretofore entitled to such Unclaimed Distributions shall cease to be entitled thereto and the Unclaimed Distributions for each such Trust Beneficiary shall then be distributed on the succeeding Payment Date on a Pro Rata basis to the Trust Beneficiaries who have received and have claimed Distributions and who are otherwise entitled to further Distributions under Sections 3.2 and 3.9, and if no such Trust Beneficiaries then exist, such Unclaimed Distributions shall be excess Distributions to be distributed in accordance with Section 3.8 of this Trust Agreement.

(b)    The Liquidating Trustee may choose to file, or cause to be filed any tax or information return. All Cash held shall be invested in accordance with this Agreement and section 345 of the Bankruptcy Code, as modified by the relevant Orders of the Court for investments made by the Debtor during the Case.

3.13    Uncashed Checks.  Checks issued in respect of a Distribution will be null and void if not negotiated within ninety (90) days after the date of issuance. Distributions with respect to such un-negotiated checks shall be treated as an Unclaimed Distribution and will revert to the Trust for distribution in accordance with the Plan and Trust Agreement, and payment to such Holder with respect to such un-negotiated check shall be discharged.

3.14    Allocation of Tax Items.

(a)    Unless otherwise required by applicable tax law, items of income, gain, loss and deduction recognized or incurred by the Trust and the amount of distributions received by the Trust shall be allocated Pro Rata among the Trust Beneficiaries who are entitled to receive Distributions in the tax year in accordance with the priorities set forth in Section 3.2 hereof.

(b)    Absent definitive guidance from the IRS or a court of competent jurisdiction to the contrary, the Liquidating Trustee shall:

(i)    treat all Trust Assets allocable to, or retained on account of, Disputed Claims, as a discrete trust for federal income tax purposes, consisting of separate and independent shares to be established in respect of each Disputed Claim;

(ii)    on the last day of each calendar year, to the extent there is a reserve for Disputed Claims on that date, treat as taxable income or loss of this separate trust, the portion of the annual taxable income or loss of the Trust that would have been allocated to the holders of such Disputed Claims had such claims been Allowed on the Effective Date;

(iii)    treat as a distribution from this separate trust any increased amounts distributed by the Trust as a result of any Disputed Claim resolved earlier in the taxable year; and

(iv)    to the extent permitted by applicable law, report consistently for state and local income tax purposes.

## ARTICLE 4

**RESERVED**

## ARTICLE 5

## SUCCESSOR CO-TRUSTEE

5.1    Removal of Liquidating Trustee.  The Liquidating Trustee may be removed, with cause, by the Bankruptcy Court upon motion of a Trust Beneficiary.  Such removal shall become effective on the date specified by the Bankruptcy Court.  In the event such removal occurs, a notice of the identity of the successor co-trustee shall be filed with the Bankruptcy Court and served on

the Trust Beneficiaries. Upon removal under this section, the removed Liquidating Trustee shall make a final report to the Trust Beneficiaries of all amounts collected under his or her ambit.

5.2    Resignation of Liquidating Trustee. The Liquidating Trustee may resign by filing written notice thereof with the Bankruptcy Court. Such resignation shall become effective on the earlier to occur of (i) sixty (60) days after the filing of such notice, or (ii) the appointment of a successor and the acceptance by such successor of such appointment. Upon resignation under this section, the resigned Liquidating Trustee shall make a final report to the Trust Beneficiaries of all amounts collected under his or her tenure.

5.3    Appointment of Successor Liquidating Trustee upon Removal, Resignation, or Death. If a Liquidating Trustee is removed pursuant to Section 5.1, resigns pursuant to Section 5.2, or dies, the Bankruptcy Court shall appoint a successor Liquidating Trustee. Any successor Liquidating Trustee appointed hereunder shall execute and file a statement accepting such appointment and agreeing to be bound by the terms of the Plan and upon such filing, the successor Liquidating Trustee shall immediately become vested with all the rights, powers, trusts and duties of the respective Liquidating Trustee.

5.4    Acceptance of Appointment by Successor Liquidating Trustee. Any successor Liquidating Trustee appointed pursuant to this Article 5 shall execute an instrument accepting such appointment as the Liquidating Trustee under this Trust Agreement and shall file and maintain such acceptance with the books and records of the Trust. Upon acceptance of such appointment as aforesaid, such successor Liquidating Trustee shall, without any further act, become vested with all the estates, properties, rights, powers, trusts and duties of its predecessor in the Trust with like effect as if originally named herein; provided, however, that a removed or resigning Liquidating Trustee shall, nevertheless, when requested in writing by the successor Liquidating Trustee, execute and deliver an instrument or instruments conveying and transferring to such successor Co-Trustee under the Trust all the estates, properties, rights, powers, and trusts of such predecessor Liquidating Trustee.

# ARTICLE 6

## EXCULPATION AND INDEMNIFICATION

6.1    Exculpation.

(a) From and after the Effective Date, the Liquidating Trustee shall be and hereby is exculpated by all Persons and entities, including, without limitation, Holders of Claims and other parties in interest, from any and all claims, causes of action and other assertions of liability arising out of the discharge of the powers and duties conferred upon said parties pursuant to or in furtherance of this Trust Agreement, the Plan, or any order of the Bankruptcy Court or applicable law or otherwise, except only for actions taken or not taken, from and after the Effective Date only to the extent determined by a Final Order to be solely due to their own respective gross negligence, willful misconduct or fraud.

(b) No Trust Beneficiary or other party-in-interest will have or be permitted to pursue any claim or cause of action against the Liquidating Trustee for making payments in accordance with the Plan or this Trust Agreement or for implementing the provisions of the Plan or this Trust Agreement. Any act taken or not taken, in the case of the Liquidating Trustee, with the approval of the Bankruptcy Court, will be conclusively deemed not to constitute gross negligence, willful misconduct, or a breach of fiduciary duty.

6.2    Indemnification.  Upon application to and order entered by the Bankruptcy Court, the Trust shall indemnify, defend and hold harmless the Liquidating Trustee and his or her respective professionals, non-professionals, employees Affiliates and representatives, including but not limited to attorneys and accountants employed by the Liquidating Trust or the Trust (the "Protected Parties") from and against any and all claims, causes of action, liabilities, obligations, losses damages or expenses (including attorneys' fees and expenses) occurring after the Effective Date which the Protected Parties may incur or which the Protected Parties may become subject to in connection with any action, suit, proceeding, or investigation brought by or threatened against such Protected Parties arising out of or due to their acts or omissions or consequences of such acts or omissions, with respect to the implementation or administration of the Trust or the Plan or the discharge of their duties hereunder or otherwise to the Trust or the Liquidating Trustee ("Related Matters"), other than to the extent determined by a Final Order to be solely due to their own respective gross negligence, willful misconduct, to the fullest extent permitted by applicable law.

6.3    Reimbursement.  Upon application to and order entered by the Bankruptcy Court, the Liquidating Trustee may authorize available unencumbered funds of the Trust to be advanced to satisfy any reasonable and documented out-of-pocket costs and expenses (including reasonable attorneys' fees and other costs of defense) incurred by any Protected Party who is threatened to be named or made a defendant or a respondent in any proceeding concerning the administration, business, and affairs of the Trust; provided, however, that all such payments are subject to disgorgement in the event that the underlying claim against the Protected Party has been finally and judicially determined to have resulted from such Protected Party's own willful misconduct, gross negligence, or fraud. In the event that, at any time whether before or after termination of this Trust Agreement, as a result of or in connection with Related Matters, any Protected Party is required to produce any of its personnel (including former employees) for examination, deposition or other written, recorded or oral presentation, or any Protected Party is required to produce or otherwise review, compile, submit, duplicate, search for, organize or report on any material within such Protected Party's possession or control pursuant to a subpoena or other legal (including administrative) process, the  Protected Party shall be reimbursed by the Trust for its out of pocket expenses, including the reasonable fees and expenses of its counsel, and will be compensated by the Trust for the time expended by its personnel based on such personnel's then current hourly rate.

## ARTICLE 7

### REPORTS TO BENEFICIARIES OF CREDITORS' TRUST

7.1     <u>Reporting to the U.S. Trustee</u>.  By thirty days following each calendar quarter commencing from and after the Effective Date, the Liquidating Trustee shall file those periodic reports required by the Chapter 11 Plan and shall promptly pay any and all United States Trustee fees due.

7.2     <u>Tax Reporting</u>.  The Liquidating Trustee shall submit to each Trust Beneficiary appearing on its records during such year a separate statement setting forth the holder's share of items of income, gain, loss, deduction or credit.  The Trust's taxable income, gain, loss, deduction, and credit will be allocated Pro Rata to the holders of Trust in accordance with such holders' respective beneficial interests in the Trust Assets.  In addition, the Liquidating Trustee shall file all tax returns required to be filed and shall pay all taxes on such returns, if any.  The Liquidating Trustee shall file (or cause to be filed) any other statements, returns, or disclosures relating to the Trust that are required by any governmental authority.

7.3     <u>Other Reporting</u>.  The Liquidating Trustee may, but is not required, prepare and file, if deemed necessary or advisable, reports of distributions and dispositions of Trust Assets other than the reports required in this Agreement.

## ARTICLE 8

### TERMINATION AND FINAL DISTRIBUTION

8.1     <u>Termination of Trust</u>.  The Trust will terminate on the earlier of (a) thirty (30) days after the full and final Distribution of the Trust Assets or proceeds thereof in accordance with the terms of this Trust Agreement and the Plan, and (b) the fifth (5th) anniversary of the Effective Date; provided, however, that within six months of the fifth (5th) anniversary of the Effective Date, the Bankruptcy Court, upon a motion by the Liquidating Trustee or any party in interest, may extend the term of the Trust for an additional term of not more than five (5) years if it is necessary for the liquidation of the Trust Assets.  Multiple extensions may be obtained so long as Bankruptcy Court approval is obtained within six months of the beginning of each such extended term. Notwithstanding the foregoing, the Liquidating Trustee shall not unduly prolong the duration of the Trust and shall at all times endeavor to resolve, settle or otherwise dispose of all property and Claims that constitute Trust Assets and to effect the full and final Distribution of the Trust Assets to the Trust Beneficiaries in accordance with the terms hereof and the Plan and, thereafter, terminate the Trust as soon as practicable.  Notwithstanding anything to the contrary herein, any termination of the Trust is conditioned upon payment of all costs and fees payable to the U.S. Trustee and filing and receiving Bankruptcy Court approval of an order to close the Case.

8.2     <u>Final Distribution</u>.  Prior to and upon termination of the Trust, the Trust Assets will be finally distributed to the beneficiaries of Trust pursuant to the provisions set forth herein.

## ARTICLE 9

### AMENDMENT AND WAIVER

9.1     Amendment and Waiver.  This Trust Agreement may not be amended, modified or supplemented, and no provision hereof or rights hereunder may be waived, except with the written consent of the Co-Trustees and authorization from the Bankruptcy Court.  Any amendments to the Trust Agreement shall not be inconsistent with the purpose and intention of the Trust to liquidate in an expeditious but orderly manner the Trust Assets.  Notwithstanding anything to the contrary herein, no amendment, modification, supplement or waiver shall be effective if it materially and adversely affects the liquidation and Distributions contemplated by the Plan, or if it would adversely affect the federal income tax status of the Trust as a "grantor trust."  The Liquidating Trustee shall promptly file a copy of each amendment, modification, supplement or waiver of this Trust Agreement.

## ARTICLE 10

## MISCELLANEOUS PROVISIONS

10.1    Intention of Parties to Establish Trust.  This Trust Agreement is intended to create a Creditors' Trust for United States federal income tax purposes and, to the extent provided by law, shall be governed and construed in all respects as such a trust and any ambiguity herein shall be construed consistent with such intent and purpose and, if necessary, this Trust Agreement may be amended to comply with such federal income tax laws, which amendments may be made to apply retroactively.

10.2    Preservation of Privilege and Defenses.  Notwithstanding anything herein or in the Plan to the contrary, the Debtor shall not be required to waive any existing rights or privileges to which they are entitled under applicable law, including but not limited to the attorney-client privilege, except with regards to Claims and Causes of Action transferred to the Trust. Notwithstanding anything herein or in the Plan to the contrary, all professionals shall reserve all rights at law regarding work product privilege.

10.3    Prevailing Party.  If the Liquidating Trustee or the Trust, as the case may be, is the prevailing party in a dispute regarding the provisions of this Trust Agreement or the enforcement thereof, the Liquidating Trustee or the Trust, as the case may be, shall be entitled to collect any and all costs, expenses and fees, including attorneys' fees, from the non- prevailing party incurred in connection with such dispute or enforcement action.

10.5    Confidentiality.  The Liquidating Trustee, and his respective employees, members, agents, professionals and advisors (each a "Confidential Party" and collectively, the "Confidential Parties") shall hold strictly confidential and not use for personal gain any material, non-public information of which they have become aware in their capacity as a Confidential Party, of or pertaining to any entity to which any of the Trust Assets relates; provided, however, that such information may be disclosed if (a) it is now or in the future becomes generally available to the public other than as a result of a disclosure by the Confidential Parties, or (b) such disclosure is required of the Confidential Parties pursuant to legal process including but not limited to subpoena or other court order or other applicable laws or regulations.  In the event that any Confidential Party is requested to divulge confidential information pursuant to this subparagraph (b), such Confidential Party shall promptly, in advance of making such disclosure, provide reasonable notice of such required disclosure to the Liquidating Trustee to allow him/her sufficient time to object to

or prevent such disclosure through judicial or other means and shall cooperate reasonably with the Co-Trustees in making any such objection, including but not limited to appearing in any judicial or administrative proceeding in support of any objection to such disclosure.

10.6    <u>Laws as to Construction</u>.  This Trust Agreement shall be governed and construed in accordance with the laws of the State of Louisiana, without giving effect to rules governing the conflict of laws.

10.7    <u>Severability</u>.  If any provision of this Trust Agreement or the application thereof to any Person or circumstance shall be finally determined by a court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this Trust Agreement, or the application of such provision to Persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and such provision of this Trust Agreement shall be valid and enforced to the fullest extent permitted by law.

10.8    <u>Retention of Jurisdiction</u>.  Notwithstanding the Effective Date and to the fullest extent permitted by law, the Bankruptcy Court shall retain exclusive jurisdiction over the Trust after the Effective Date, including, without limitation, jurisdiction to resolve any and all controversies, suits and issues that may arise in connection with the Trust, the Trust Agreement, or any entity's obligations incurred in connection with the Trust, and any action against the Liquidating Trustee or any professional retained by the Liquidating Trustee or the Trust, in each case in its capacity as such. Each party to this Trust Agreement hereby irrevocably consents to the exclusive jurisdiction of the Bankruptcy Court in any action to enforce, interpret or construe any provision of this Trust Agreement or of any other agreement or document delivered in connection with this Trust Agreement, and also hereby irrevocably waives any defense of improper venue, *forum non conveniens* or lack of personal jurisdiction to any such action brought in the Bankruptcy Court. Each party further irrevocably agrees that any action to enforce, interpret or construe any provision of this Trust Agreement will be brought only in the Bankruptcy Court. Each party hereby irrevocably consents to service by certified or registered mail, return receipt requested, to be sent to its address set forth in this Trust Agreement or in the official Schedules filed in the Case or to such other address as it may designate from time to time by notice given in the manner provided above, of any process in any action to enforce, interpret or construe any provision of this Trust Agreement.

10.9    <u>Notices</u>.  Any notice or other communication under this Trust Agreement shall be in writing and shall be given by either (i) hand-delivery, (ii) first class mail (postage prepaid), (iii) reliable overnight commercial courier (charges prepaid), or (iv) email, if confirmed promptly by any of the methods specified in clauses (i), (ii) and (iii) of this sentence, to the following addresses:

If to the Liquidating Trustee:

_____

with copies to:

_____

Notice given by email shall be deemed to have been given and received when received <u>and</u> read by recipient, and notices via email shall require a read-receipt attachment for such purposes. Notice by overnight courier shall be deemed to have been given and received on the date scheduled for delivery.  Notice by mail shall be deemed to have been given and received three (3) calendar days after the date first deposited in the United States Mail.  Notice by hand delivery shall be deemed to have been given and received upon delivery.  A party may change its address by giving written notice to the other party as specified herein.

10.10  <u>Headings</u>.  The section headings contained in this Trust Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Trust Agreement or of any term or provision hereof.

10.11  <u>Integration</u>.  This Trust Agreement and the Plan constitute the entire agreement of the parties with respect to the subject matter hereof and thereof and supersede all oral negotiations and prior writings with respect to the subject matter hereof and thereof.

10.12  <u>Further Assurances</u>.  From and after the Effective Date, the parties hereto covenant and agree to execute and deliver all such documents and notices and to take all such further actions as may reasonably be required from time to time to carry out the intent and purposes of the Trust and to consummate the transactions contemplated hereby.

10.13  <u>Successors and Assigns</u>.  The terms of this Trust Agreement shall be binding upon, and shall inure to the benefit of, the parties hereto, and their respective successors and assigns.

10.14  <u>Counterparts</u>.  This Trust Agreement may be signed by the parties hereto in counterparts, which, taken together, shall constitute one and the same document, and the counterparts may be delivered by facsimile transmission or by electronic mail in portable document format (.pdf).

10.15  <u>Relationship to the Plan</u>.  The principal purpose of this Trust Agreement is to aid in the implementation of the Plan and therefore this Trust Agreement incorporates the provisions of the Plan.  To that end, the Liquidating Trustee shall have full power and authority to take any action consistent with the purpose and provisions of the Plan, and to seek any orders from the Bankruptcy Court in furtherance of implementation of the Plan and this Trust Agreement. If any provisions of this Trust Agreement are found to be inconsistent with the provisions of the Plan, the provisions of the Plan shall control.

IN WITNESS WHEREOF, the parties hereto have either executed and acknowledged this Trust Agreement, or caused it to be executed and acknowledged on their behalf by their duly authorized officers, all as of the date first above written.

**Date: _____, 2019.**

**Dwayne M. Murray, in his capacity as Manager of W Resources, LLC, in its capacity as sole Member of Delta Duck Farms, LLC**

By: _____

**_____, in his capacity as
Liquidating Trustee for the Delta Duck Farms,
LLC Liquidating Trust**

By: _____